## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HERITAGE ACTION FOR AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 22-1422 (CJN) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, *et al.*, | ) | MOTION TO DISMISS |
| | ) | |
| Defendants. | ) | |

### FEDERAL ELECTION COMMISSION'S SECOND MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, the Federal Election Commission ("FEC") hereby moves for an order dismissing all counts in plaintiff's complaint, including those that seek relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702-706, and mandamus, 28 U.S.C. § 1361, for lack of jurisdiction. This motion addresses the impact of material factual developments since the Commission filed its prior Motion to Dismiss (Docket Nos. 17, 23) in this matter in July 2022. In the intervening time, every FEC Matter Under Review ("MUR") plaintiff has challenged in this litigation has closed, and the records plaintiff has sought as to those matters are either in plaintiff's possession or are available to the public on the FEC's website. Plaintiff now has all the relief it sought in this matter, even as to its broader claims, and it has provided no evidence that it is likely to suffer any kind of harm in the future. These developments moot plaintiff's claims in their entirety, and so plaintiff's Complaint should be dismissed. A supporting memorandum and a proposed order accompany this motion.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Greg J. Mueller (D.C. Bar No. 462840)
Attorney
gmueller@fec.gov

*/s/ Christopher Bell*
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
January 4, 2023                         (202) 694-1650

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERITAGE ACTION FOR AMERICA,       )<br>      )<br>      Plaintiff,       )<br>      )<br>      v.       )<br>      )<br>FEDERAL ELECTION COMMISSION, *et al.*,  )<br>      )<br>      Defendants.       ) | Civ. No. 22-1422 (CJN)<br><br>MOTION TO DISMISS |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF ITS SECOND MOTION TO DISMISS**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Greg J. Mueller (D.C. Bar No. 462840)
Christopher H. Bell (D.C. Bar No. 1643526)
Attorneys
gmueller@fec.gov
chbell@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

January 4, 2023

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ...................................................................................................1

I.    THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT
      PROCEDURES..........................................................................................1

II.   FACTUAL BACKGROUND .....................................................................5

      A.    MUR 7516 and Related Proceedings .................................................5

      B.    This Action Challenging the Withholding of
            MUR Records ...................................................................................7

      C.    Post-Suit Release of MUR 7516 Material and
            File Closure ......................................................................................8

      D.    The Commission's First Motion to Dismiss ......................................9

      E.    Post-Suit File Closure and Release of Other
            Administrative Matters ...................................................................10

      F.    Post-Release Proceedings in This Case ...........................................14

ARGUMENT ....................................................................................................17

I.    STANDARD OF REVIEW ......................................................................17

II.   PLAINTIFF'S CLAIMS ARE MOOT AND SHOULD
      BE DISMISSED ......................................................................................19

      A.    A Case Is Moot When There Is No Longer a
            Live Controversy ............................................................................19

      B.    Plaintiff Has Attained All of the Relief It Sought in
            This Litigation ................................................................................20

            1.    Plaintiff's Request for Documents Is Moot .........................21

            2.    Plaintiff's Request for Declaratory Judgment Is Moot ........24

      C.    Plaintiff Has No Reasonable Expectation That the Alleged
            Wrong Will Be Repeated .................................................................28

1.      There Is No Evidence That Plaintiff Will Suffer the
        Harm It Alleges in the Future by Being Subject to Any
        FEC Enforcement Proceeding, Much Less One in the
        Specific Procedural Posture It Has Identified Here ...........................28

2.      The Voluntary-Cessation Exception to Mootness Does
        Not Apply, and This Case Would Be Moot Even If the
        Exception Did Apply ........................................................................30

CONCLUSION..................................................................................................35

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*A.L. Mechling Barge Lines, Inc. v. United States,*
  368 U.S. 324 (1961) ................................................................. 27

*Akinseye v. District of Columbia*, 339 F.3d 970 (D.C. Cir. 2003) ............................................... 18

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ................................................................. 32, 33, 34

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ........................................................................... 18

*Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156 (D.C. Cir. 1997) ...... 20, 24-25, 28, 29-30

*Barr v. Clinton*, 370 F.3d 1196 (D.C. Cir. 2004) ......................................................................... 18

*Belmont Abbey Coll. v. Sebelius*, Civ. No. 11-1989,
  2012 WL 3861255 (D.D.C. Sept. 5, 2012) ................................................................. 29

*Buckley v. Valeo*, 424 U.S. 1 (1976) ....................................................................................... 2

*Calderon v. Berryhill*, Civ. No. 17-494, 2019 WL 95565 (D.D.C. Jan. 3, 2019) ........................ 18

*Campaign Legal Center v. FEC*, Civ. No. 21-406 (D.D.C.) (Feb. 16, 2021) ........................... 6, 25

*Campaign Legal Center v. Heritage Action*,
  Civ. No. 22-1248 (D.D.C.) (July 8, 2022) ................................................................. 6, 8, 23, 25

*Carney v. Adams*, 141 S. Ct. 493 (2020) ................................................................................. 24

*Cato Inst. v. Sec. & Exch. Comm'n*, 4 F.4th 91 (D.C. Cir. 2021) ............................................. 29

*Chamber of Com. of U.S. of Am. v. U.S. Dep't of Energy*,
  627 F.2d 289 (D.C. Cir. 1980) ................................................................................. 27, 30

*Citizens for Percy '84 v. FEC*, Civ. No 84-2653,
  1984 WL 6601 (D.D.C. Nov. 19, 1984) ................................................................. 26

*Citizens for Resp. & Ethics in Wash. v. FEC*,
  799 F. Supp. 2d 78 (D.D.C. 2011) ................................................................................. 22

*City of Orville v. FERC*, 147 F.3d 979 (D.C. Cir. 1998) ............................................................. 29

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................................................... 20, 28, 29

iii

*Clark v. United States*, 915 F.2d 699 (D.C. Cir. 1990)..........................................................19-20

*Coleman v. Miller*, 307 U.S. 433 (1939)........................................................................ 24

*Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) ........................................... 26

*Connectu LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008) ......................................... 25

*Deakins v. Monaghan*, 484 U.S. 193 (1988).................................................................. 34

*Democratic Senatorial Campaign Comm. v. FEC*, Civ. No. 95-0349,
    1996 WL 34301203 (D.D.C. Apr. 17, 1996)............................................................ 26

*Doe v. Harris*, 696 F.2d 109 (D.C. Cir. 1982)...................................................... 27, 28

*Ex parte McCardle*, 74 U.S. 506 (1868)...................................................................... 19

*FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) ................... 4

*Flast v. Cohen*, 392 U.S. 83 (1968) ............................................................................. 24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) ............................................................................ 19, 30, 32, 34

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................................ 19

*Giffords v. FEC*, Civ. No. 19-1192, 2021 WL 4805478 (D.D.C. Oct. 14, 2021)....................... 26

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    920 F.3d 1 (D.C. Cir. 2019)............................................................................ 32, 33

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................. 19

*In re Burrell*, 415 F.3d 994 (9th Cir. 2005) ............................................................... 29

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019)............................................................................... 29

*Int'l Bhd. of Teamsters v. TSA*, 429 F.3d 1130 (D.C. Cir. 2005)........................... 19, 20

*Jones v. Ashcroft*, 321 F. Supp. 2d 1 (D.D.C. 2004).................................................. 17

*Khadr v. United States*, 529 F.3d 1112 (D.C. Cir. 2008)...................................... 17, 20

*Klayman v. Obama*, 142 F. Supp. 3d 172 (D.D.C. 2015) .................................................. 20, 28, 29

*Koppers Indus., Inc. v. U.S. E.P.A.*, 902 F.2d 756 (9th Cir.1990) ........................................ 29

*Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429 (D.C. Cir. 1976) ............................................... 18

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ....................................................... 19, 21

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..................................................... 19, 20, 27, 34

*Paging Sys., Inc. v. FCC*, Civ. No. 10-1097,
    2010 WL 5121962 (D.C. Cir. Aug. 30, 2010) .......................................................... 29

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ................................................................... 24, 30

*Settles v. U.S. Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005) ....................................... 18

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) ........................................................... 29

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .............................................. 19

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ....................................................... 19

*Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ........................... 26

**Statutes and Regulations**

52 U.S.C. §§ 30101-46 ....................................................................................................... 2

52 U.S.C. § 30104(c)(1) .................................................................................................. 5, 6

52 U.S.C. § 30104(c)(2)(C) ............................................................................................. 5, 6

52 U.S.C. § 30106(b)(1) ...................................................................................................... 2

52 U.S.C. § 30106(c) .............................................................................................. 4, 31, 34

52 U.S.C. § 30106(e) ........................................................................................................... 2

52 U.S.C. § 30107(a) ........................................................................................................... 2

52 U.S.C. § 30107(a)(6) ....................................................................................................... 2

52 U.S.C. § 30107(a)(7) ....................................................................................................... 2

52 U.S.C. § 30107(a)(8) ....................................................................................................... 2

52 U.S.C. § 30107(e) ............................................................................................................ 2

52 U.S.C. § 30108 ................................................................................................................ 2

52 U.S.C. § 30109 ................................................................................................................ 2

52 U.S.C. § 30109(a)(1) ....................................................................................................... 2

52 U.S.C. § 30109(a)(2) ................................................................................................... 2, 3

52 U.S.C. § 30109(a)(3) ................................................................................................... 3, 4

52 U.S.C. § 30109(a)(4)(A)(i) .............................................................................................. 4

52 U.S.C. § 30109(a)(6) ................................................................................................... 2, 4

52 U.S.C. § 30109(a)(8) ....................................................................................................... 9

52 U.S.C. § 30109(a)(8)(A) ............................................................................................ 4, 6, 7

52 U.S.C. § 30109(a)(8)(C) ............................................................................................ 4, 6, 7

52 U.S.C. § 30109(a)(12) ..................................................................................................... 2

52 U.S.C. § 30111(a)(8) ....................................................................................................... 2

11 C.F.R. § 2.4 ..................................................................................................................... 3

11 C.F.R. § 111.16 ............................................................................................................ 3, 4

11 C.F.R. § 111.20 ............................................................................................................... 2

11 C.F.R. § 111.21 ............................................................................................................... 2

**Miscellaneous**

FEC, Disclosure of Certain Documents in Enforcement and Other Matters,
   81 Fed. Reg. 50,702 (Aug. 2, 2016) ............................................................................ 4, 15

FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage
   in the Enforcement Process, 72 Fed. Reg. 12,545 (Mar. 16, 2007) ................................. 3

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 20

Fed. R. Civ. P. 12(h)(3) ...................................................................................................... 18

Nomination Hearing of Dana [sic] Lindenbaum to be a Commissioner on the Federal Election
  Commission, S. Hrg. 117-237 (Apr. 6, 2022) ....................................................................10-11

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1384 & 1393
  (3d ed. 2018)............................................................................................................................ 18

The Federal Election Commission ("Commission" or "FEC") is filing this second motion to dismiss because recent events have rendered the claims of plaintiff Heritage Action for America ("Heritage Action") moot in their entirety.  At the outset of this matter, Heritage Action sought voting records in a number of administrative enforcement matters which were then before the Commission, although plaintiff had no connection to most of those matters.  Plaintiff claimed those records were being unlawfully withheld pursuant to a "policy" to conceal such records in violation of the Administrative Procedure Act ("APA").  As the FEC explained in prior briefing, the Court never had jurisdiction to consider plaintiff's challenges, which also failed to state a claim under the APA and the mandamus statute.

In any event, the composition of the FEC recently changed, and the Commissioners took a series of successful votes in late August 2022 to close the files with respect to every FEC Matter Under Review ("MUR") that plaintiff alleged had been effectively terminated and improperly concealed.  All these files are now administratively closed, and the materials sought in plaintiff's Complaint, specifically the relevant vote certifications and statements of reasons, are now available on the FEC's website.  Plaintiff thus has access to *all* of the relief it sought in this case, and it does not allege that it is likely to suffer any cognizable injury in the future.  This matter is moot and should be dismissed accordingly.

## BACKGROUND

The Commission has provided portions of this background information relevant to events prior to the recent MUR closures in briefing on previous dispositive motions, and it again provides that information here for ease of reference.  New developments are also summarized.

## I.    THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT PROCEDURES

The FEC is an independent agency of the United States government with jurisdiction over the administration, interpretation, and civil enforcement of the Federal Election Campaign

Act, 52 U.S.C. §§ 30101-46 ("FECA"). *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109. Congress provided for the Commission to "prepare written rules for the conduct of its activities," 52 U.S.C. § 30106(e), "formulate policy" under FECA, *see, e.g.*, 52 U.S.C. § 30106(b)(1), and make rules and issue advisory opinions, 52 U.S.C. §§ 30107(a)(7), (8); *id.* §§ 30108; 30111(a)(8); *see also Buckley v. Valeo*, 424 U.S. 1, 110-11 (1976) (per curiam). The Commission is also authorized to institute investigations of possible violations of FECA, 52 U.S.C. § 30109(a)(1)-(2), and to initiate civil enforcement actions in the United States district courts, *id.* §§ 30106(b)(1), 30107(a)(6), 30107(e), 30109(a)(6).

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the statute. 52 U.S.C. § 30109(a)(1). Absent waiver, proceedings on such complaints are covered by confidentiality protections, 52 U.S.C. § 30109(a)(12), 11 C.F.R. § 111.21, until the Commission "terminates its proceedings," 11 C.F.R. § 111.20. Upon receipt of an administrative complaint, the Commission's Office of General Counsel ("OGC") is required to notify anyone alleged to have committed such a violation, referred to as a respondent, and to provide such persons with an opportunity to demonstrate in writing that no action should be taken. *Id*. OGC then prepares a report to the Commission known as a General Counsel's Report. The Report analyzes the allegations in the complaint, applies the relevant law to the facts alleged, and sets forth OGC's recommendations for Commission action. The first General Counsel's Report in an enforcement MUR usually includes a recommendation that the Commission take actions regarding the alleged violations, including most commonly: (1) find reason to believe that a violation occurred and open an investigation; (2) find no reason to believe a violation occurred; (3) dismiss the matter as an exercise of prosecutorial discretion; or (4) dismiss the matter with a cautionary message to the respondent regarding its legal

obligations.  And FEC votes at this stage are frequently, although not always, on whether to take one or more of these courses of action.  *See* FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545 (Mar. 16, 2007).

Generally, if one or more Commissioners objects to a first General Counsel's Report after it has been circulated to the Commission, or if fewer than four Commissioners vote to approve or reject the report's recommendations by the voting deadline, the Commission considers the enforcement matter at an Executive Session.  *See generally* FEC, Commission Directive No. 52 (Circulation Vote Procedure) (effective Dec. 1, 2016).  Executive Sessions are meetings that are closed to the public during which Commissioners consider pending enforcement matters and other items that must be kept confidential.  *See* 11 C.F.R. § 2.4.  During such meetings, the Commissioners may, *inter alia*, discuss OGC's recommendations and vote on potential actions like those described above, including whether there is "reason to believe" that a FECA violation has occurred.  52 U.S.C. § 30109(a)(2).

If at least four members of the Commission vote to find "reason to believe" a FECA violation has occurred, the Commission must notify the respondent of the alleged violation and its factual basis, and the agency then ordinarily investigates the allegations.  *Id.*  On the other hand, if at least four Commissioners determine that there is "no reason to believe" a violation occurred or that it is otherwise not appropriate to proceed with an investigation, they may vote to dismiss and to close the file in the matter.  FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,546.

After an investigation, OGC may recommend that the Commission find that there is "probable cause" to believe FECA has been violated.  52 U.S.C. § 30109(a)(3).  Respondents are

entitled to file a responsive brief, *id*., and OGC prepares a report to the Commission with further recommendations, 11 C.F.R. § 111.16.  If at least four members of the Commission vote to find probable cause to believe that a violation has occurred, the Commission must first attempt to resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondents.  52 U.S.C. § 30109(a)(4)(A)(i).  If informal methods of conciliation fail, the Commission may, "upon an affirmative vote of 4 of its members," file a *de novo* civil enforcement suit in federal district court.  *Id.* § 30109(a)(6)(A).  After the termination of enforcement matters, the Commission places on the public record categories of documents integral to its decision-making process, including certifications of Commission votes.  FEC, Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702, 50,703 (Aug. 2, 2016).

FECA provides that the administrative complainant may seek judicial review in this District, pursuant to 52 U.S.C. § 30109(a)(8)(A), in the event that the Commission dismisses or is alleged to have failed to act on a complaint.  Defense of such cases may only be approved through an affirmative vote of four members of the Commission.  52 U.S.C. §§ 30106(c), 30107(a)(6).  If a court in a review action declares that a Commission dismissal or failure to act is "contrary to law," the court can order the Commission to conform to that declaration within 30 days.  *Id.* § 30109(a)(8)(C).  If the Commission fails to conform to the declaration within 30 days, the complainant may obtain a private right of action against the administrative respondent for the alleged violations.  *Id.*; *FEC v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 488 (1985).

## II.   FACTUAL BACKGROUND

### A.   MUR 7516 and Related Proceedings

As explained in the FEC's Motion to Dismiss (FEC's Mem. of P. & A. in Supp. of Its

Mot. to Dismiss ("Motion to Dismiss" or "MTD") at 5-7 (Docket No. 17)), on October 16, 2018,

the Campaign Legal Center ("CLC") and an individual, Margaret Christ, filed an administrative

complaint with the FEC against Heritage Action.  *See* Compl., MUR 7516 (Heritage Action for

America) (Oct. 16, 2018).[1]  The FEC designated the enforcement matter as MUR 7516.

Notification of Compl. to Heritage Action for America, MUR 7516 (Oct. 22, 2018).[2]  OGC

drafted a comprehensive First General Counsel's Report and provided it to the Commission on

February 19, 2021.  First General Counsel's Report, MUR 7516 (Feb. 19, 2021).[3]

On April 6, 2021, the Commission voted on whether there was reason to believe that

Heritage Action had "violated 52 U.S.C. § 30104(c)(1) by failing to disclose donors who

contributed for political purposes" and "52 U.S.C. § 30104(c)(2)(C) by failing to further identify

the donors who donated for the purpose of funding an independent expenditure."  Cert., MUR

7516 (Apr. 6, 2021).[4]  The Commissioners divided 3-3 on this vote.  *Id.*  That same day, the

Commissioners voted on whether to close the administrative file for MUR 7516, which has long

been the agency's customary method to terminate the proceedings on an administrative

enforcement matter, but that vote split 3-3 and thus did not succeed.  *Id.*

Meanwhile, on February 16, 2021, CLC sued the FEC, claiming that it had failed to act

on CLC's administrative complaint and that this inaction was contrary to law under 52 U.S.C. §

---

[1]      https://www.fec.gov/files/legal/murs/7516/7516_01.pdf.

[2]      https://www.fec.gov/files/legal/murs/7516/7516_02.pdf.

[3]      https://www.fec.gov/files/legal/murs/7516/7516_05.pdf.

[4]      https://www.fec.gov/files/legal/murs/7516/7516_06.pdf.

30109(a)(8)(A). *CLC v. FEC*, Civ. No. 21-406 (D.D.C.) (Feb. 16, 2021) (Docket No. 1). On March 25, 2022, after there had not been the four votes necessary for the agency to defend the action alleging that it had failed to act on MUR 7516, the court in that case entered default judgment against the FEC and ordered the agency to conform to its judgment pursuant to 52 U.S.C. § 30109(a)(8)(C). *Id.* (Docket No. 16).

Also on March 25, 2022, Heritage Action submitted a waiver of statutory confidentiality and a Freedom of Information Act ("FOIA") request to the FEC seeking any vote certifications and statements of reasons in MUR 7516. *CLC v. Heritage Action*, Civ. No. 22-1248 (D.D.C.) (July 8, 2022) (Docket No. 20-6).

On April 7, 2022, the Commissioners divided 3-2 and 3-1 on further votes to find reason to believe that Heritage Action had violated 52 U.S.C. § 30104(c)(1) and 52 U.S.C. § 30104(c)(2)(C). Cert., MUR 7516 (Apr. 7, 2022).[5] That same day, the Commissioners split 3-3 on two votes to close the file in MUR 7516. *Id.*

On May 5, 2022, after more than 30 days had elapsed since the judgment of the court in *CLC v. FEC*, Civ. No. 21-406, CLC filed a private action against Heritage Action alleging the FECA violations from MUR 7516. *CLC v. Heritage Action*, Civ. No. 22-1248 (Docket No. 1).

On May 13, 2022, the three FEC Commissioners who had voted against finding reason to believe in MUR 7516 placed a controlling Statement of Reasons explaining their votes in the file. Statement of Reasons of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7516 (May 13, 2022).[6]

---

[5]     https://www.fec.gov/files/legal/murs/7516/7516_17.pdf.

[6]     https://www.fec.gov/files/legal/murs/7516/7516_15.pdf.

**B.      This Action Challenging the Withholding of MUR Records**

Plaintiff filed this suit principally asserting APA causes of action on May 20, 2022.  (*See* Compl.)  Plaintiff claimed that it had been harmed by lack of access to the vote certifications and statements of reasons in MUR 7156.  (Compl. ¶¶ 3-10.)  Alongside that relatively confined challenge, however, plaintiff made the broader claim that it is only one victim of an alleged "policy" of the Commission to deliberately conceal the FEC Commissioners' voting records and statements of reasons from the respective subjects in otherwise terminated enforcement proceedings in violation of the APA.  (Compl. ¶¶ 1, 2.)  Plaintiff alleged that this "concealment policy" has harmed a number of other respondents in then-unidentified MURs, over an indeterminate period of time.  (Compl. ¶¶ 3, 73-74.)

In support of this theory, Heritage Action contended that whenever a motion to find reason to believe that a respondent in an FEC enforcement MUR has violated FECA fails to garner the necessary four Commissioner votes for the matter to proceed, the matter is automatically terminated.  (Compl. ¶¶ 29-30.)  Plaintiff claimed that any subsequent failure to close the MUR file, and to disclose the voting records and statement of reasons, violates the Commission's legal obligations.  (*See* Compl. ¶¶ 36-38.)  Plaintiff alleged that, because FECA allows complainants to sue the Commission if it "fail[s] . . . to act" on an administrative complaint and then to sue the respondent directly if the FEC still fails to act, 52 U.S.C. § 30109(a)(8)(A), (C), by failing to close the file the Commission had "left the public and courts with the false impression that it has not taken action" on the administrative complaint, "thus deliberately subjecting the Commission and Heritage Action to direct civil lawsuits on false pretenses."  (Compl. ¶ 7.)  Heritage Action noted that it is a defendant in such a private right of action stemming from MUR 7516.

These claims formed the basis of plaintiff's five-count complaint.  Counts I through IV all allege violations of the APA, while Count V seeks mandamus relief.  In all Counts, plaintiff seeks an order that defendants terminate MUR 7516 and release the voting records and statements of reasons to plaintiff.  (Compl. ¶¶ 88, 94, 100, 109, 115.)

### C.     Post-Suit Release of MUR 7516 Material and File Closure

On June 2, 2022, in response to the FOIA request that Heritage Action had submitted, the Commission authorized the release to Heritage Action of the certifications of votes that had occurred in MUR 7516 prior to the date of its FOIA request.  *CLC v. Heritage Action*, Civ. No. 22-1248 (D.D.C.) (July 8, 2022) (Docket No. 20-6).  On June 15, 2022, pursuant to the granting of its FOIA request, Heritage received a copy of the Statement of Reasons by three Commissioners that was dated May 13, 2022.  *Id.* (Docket No. 20-7).

On June 7, 2022, FEC Commissioners voted to close the administrative file for MUR 7516, and a notification was sent to Heritage Action on June 9, 2022.  Notification to Heritage Action on June 9, 2022.[7]  Two Commissioners who had voted to find reason to believe issued a Statement of Reasons explaining their votes on July 7, 2022.  Statement of Reasons of Commissioners Shana M. Broussard and Ellen L. Weintraub, MUR 7516 (July 7, 2022).[8]  The case file was released to the public via the FEC's website on July 13, 2022.[9]  The file included

---

[7]     https://www.fec.gov/files/legal/murs/7516/7516_14.pdf.

[8]     https://www.fec.gov/files/legal/murs/7516/7516_16.pdf.

[9]     These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7516/ (last visited Oct. 24, 2022) (MUR 7516 Main Page).  The particular records sought by plaintiff are attached as Exhibit A and are available at the following URLs:

https://www.fec.gov/files/legal/murs/7516/7516_06.pdf (vote cert. 04/06/2021);

https://www.fec.gov/files/legal/murs/7516/7516_07.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7516/7516_10.pdf (vote cert. 04/06/2022);

https://www.fec.gov/files/legal/murs/7516/7516_17.pdf (vote cert. 04/07/2022);

both of the Statements of Reasons described above, as well as other documents customarily released to the public.  *Id.*

### D.     The Commission's First Motion to Dismiss

The Commission filed a Motion to Dismiss plaintiff's claims on July 22, 2022.  In its Motion to Dismiss the Commission argued that plaintiff's claims are precluded because (1) the judicial review provision of the Federal Election Campaign Act, 52 U.S.C. § 30109(a)(8), is the exclusive means of challenging the FEC's handling of administrative enforcement matters; (2) plaintiff is in possession of all the information it seeks as to MUR 7516, rendering that portion of its claims moot, and plaintiff has not established standing to obtain any relief on behalf of unnamed third parties as to its broad "concealment policy" claims; and (3) plaintiff fails even to state a claim under the Administrative Procedure Act ("APA") because the actions it challenges are committed to the FEC's discretion by law and there is no reviewable "final agency action."

In response, on August 5, 2022, plaintiff filed its Memorandum in Opposition to the Commission's Motion to Dismiss and Cross-Motion for Summary Judgment ("Motion for Summary Judgment" or "MSJ") (Docket No. 20-1).  In this motion plaintiff moved for judgment on each of its claims based on the existing record before the Court.  Plaintiff stated that no administrative record was necessary for the Court to rule on its claims, while simultaneously stating that the public file for MUR 7516 released by the Commission "would be the administrative record."  (MSJ at 28 n.3 (citing FEC, *MUR #7516: Summary*, https://www.fec.gov/data/legal/matter-under-review/7516/ (last visited Sept. 15, 2022)).)  The

---

https://www.fec.gov/files/legal/murs/7516/7516_12.pdf (vote cert. 06/07/2022);
https://www.fec.gov/files/legal/murs/7516/7516_15.pdf (SOR 05/13/2022);
https://www.fec.gov/files/legal/murs/7516/7516_16.pdf (SOR 07/07/2022).

Commission filed its Opposition to plaintiff's summary judgment motion on August 26, 2022.

(Opposition to Plaintiff's Cross-Motion for Summary Judgment ("MSJ Opp.") (Docket No. 26).)

### E.   Post-Suit File Closure and Release of Other Administrative Matters

On June 7, 2022, FEC Commissioners voted to close the administrative file for MUR

7422 (Greitens for Missouri, *et al.*), one of the other MURs that plaintiff has claimed was subject

to a "concealment policy," *see supra* p. 7, and the case file was released to the public shortly

thereafter.[10]

During the summer of 2022 the composition of the Commission changed, resulting in the

closure of every other MUR plaintiff alleges was improperly held open.  Specifically, in July

2022 former Commissioner Steven Walther retired, and he was succeeded by Commissioner

Dara Lindenbaum, who was sworn in on August 2, 2022.  FEC, *Dara Lindenbaum Sworn In As*

*Commissioner* (Aug. 2, 2022), https://www.fec.gov/updates/dara-lindenbaum-sworn-in-as-

commissioner/.  In her confirmation hearings before the U.S. Senate in April of 2022, in

response to a question that appeared to be directed at the MURs that plaintiff has identified in

this case, Commissioner Lindenbaum expressed the view that such matters should be closed, and

she committed to advocating for that.  *See* Nomination Hearing of Dana [sic] Lindenbaum to be

---

[10]       These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7422/ (last visited Sept. 14, 2022) (MUR 7422 Main Page).  The particular records sought by plaintiff are attached as Exhibit B and are available at the following URLs:

https://www.fec.gov/files/legal/murs/7422/7422_67.pdf (vote cert. 06/25/2020);

https://www.fec.gov/files/legal/murs/7422/7422_68.pdf (vote cert. 01/14/2021);

https://www.fec.gov/files/legal/murs/7422/7422_70.pdf (vote cert. 01/13/2022);

https://www.fec.gov/files/legal/murs/7422/7422_71.pdf (vote cert. 06/07/2022);

https://www.fec.gov/files/legal/murs/7422/7422_83.pdf (SOR 08/28/2020);

https://www.fec.gov/files/legal/murs/7422/7422_82.pdf (SOR 05/13/2022);

https://www.fec.gov/files/legal/murs/7422/7422_84.pdf (SOR 07/08/2022).

a Commissioner on the Federal Election Commission, S. Hrg. 117-237, at 7 (Apr. 6, 2022).[11]

Soon thereafter, on August 29, 2022, there were successful votes to close the file in a number of FEC MURs, including each of the MURs that were subject to plaintiff's allegations in this case.  Specifically, on August 29 the Commission voted to close the following MURs, which has resulted in the required notifications being sent to complainants and respondents, along with the certifications of Commission votes and Commissioner statements of reasons being placed on the public record:

- MUR 6589R (American Action Network);[12]

---

[11]     https://www.govinfo.gov/content/pkg/CHRG-117shrg47323/pdf/CHRG-117shrg47323.pdf.  The full relevant exchange proceeded as follows:

Senator Blunt: "On the whole idea of the files and the time it takes to process this, and I think we have both mentioned and I know I mentioned in my comments the importance of clearing through this backlog, but I have heard recently that the FEC is not always voting now to close files when they have reached a final determination.

"It seems to me that that is--it is unnecessary to have a file out there that is still available to the public if, or other attorneys, if the FEC has made a final decision on that. What is your view on whether these files that have been decided on, how should they be--how should they be handled?"

Ms. Lindenbaum: "I believe they should be closed."

Senator Blunt: "Okay, good. You will commit to advocating for that?"

Ms. Lindenbaum: "Yes."

*Id.*

[12]     These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/6589R/ (last visited Sept. 14, 2022) (MUR 6589R Main Page).  The particular records sought by plaintiff are attached as Exhibit C and are available at the following URLs:

https://www.fec.gov/files/legal/murs/6589R/6589R_08.pdf (vote cert. 06/24/2014);

https://www.fec.gov/files/legal/murs/6589R/6589R_17.pdf (vote cert. 10/18/2016);

https://www.fec.gov/files/legal/murs/6589R/6589R_22.pdf (vote cert. 05/10/2018);

https://www.fec.gov/files/legal/murs/6589R/6589R_26.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/6589R/6589R_27.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/6589R/6589R_11.pdf (SOR 07/30/2014);

- MURs 6915 and 6927 (John Ellis Bush, *et al.*);[13]

- MURs 7427, 7497, 7524, and 7553 (Nat'l Rifle Ass'n of Am. Political Victory Fund, *et al.*);[14]

---

https://www.fec.gov/files/legal/murs/6589R/6589R_30.pdf (SOR 05/13/2022);

https://www.fec.gov/files/legal/murs/6589R/6589R_31.pdf (SOR 09/30/2022).

[13]     These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/6915/ (MUR 6915 Main Page), and https://www.fec.gov/data/legal/matter-under-review/6927/  (MUR 6927 Main Page) (last visited Sept. 14, 2022).  The particular records sought by plaintiff are attached as Exhibit D and are available at the following URLs (duplicate records omitted):

https://www.fec.gov/files/legal/murs/6915/6915_33.pdf (vote cert. 12/06/2018);

https://www.fec.gov/files/legal/murs/6915/6915_34.pdf (vote cert. 12/13/2018);

https://www.fec.gov/files/legal/murs/6915/6915_35.pdf (vote cert. 04/09/2019);

https://www.fec.gov/files/legal/murs/6915/6915_36.pdf (vote cert. 04/23/2019);

https://www.fec.gov/files/legal/murs/6915/6915_37.pdf (vote cert. 05/07/2019);

https://www.fec.gov/files/legal/murs/6915/6915_38.pdf (vote cert. 05/23/2019);

https://www.fec.gov/files/legal/murs/6915/6915_39.pdf (vote cert. 06/23/2020);

https://www.fec.gov/files/legal/murs/6915/6915_41.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/6915/6915_40.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/6915/6915_45.pdf (SOR 05/13/2022);

https://www.fec.gov/files/legal/murs/6915/6915_46.pdf (SOR 09/30/2022);

https://www.fec.gov/files/legal/murs/6915/6915_47.pdf (SOR 10/04/2022).

[14]     These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7427/ (MUR 7427 Main Page), https://www.fec.gov/data/legal/matter-under-review/7497/ (MUR 7497 Main Page), https://www.fec.gov/data/legal/matter-under-review/7524/ (MUR 7524 Maine Page), https://www.fec.gov/data/legal/matter-under-review/7553/, and (MUR 7553 Main Page) (last visited Sept. 14, 2022).  The particular records sought by plaintiff are attached as Exhibit E and are available at the following URLs (duplicate records omitted):

https://www.fec.gov/files/legal/murs/7427/7427_40.pdf (vote cert. 02/09/2021);

https://www.fec.gov/files/legal/murs/7427/7427_41.pdf (vote cert. 02/23/2021);

https://www.fec.gov/files/legal/murs/7427/7427_42.pdf (vote cert. 02/23/2021);

https://www.fec.gov/files/legal/murs/7427/7427_65.pdf (vote cert. 02/23/2021);

https://www.fec.gov/files/legal/murs/7427/7427_44.pdf (vote cert. 10/26/2021);

- MUR 7486 (45Committee, Inc.);[15]

- MURs 7672, 7674, and 7732 (Iowa Values, *et al.*);[16]

_____

https://www.fec.gov/files/legal/murs/7427/7427_49.pdf (vote cert. 12/02/2021);

https://www.fec.gov/files/legal/murs/7427/7427_50.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7427/7427_51.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7427/7427_53.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/7427/7427_64.pdf (SOR 12/23/2021);

https://www.fec.gov/files/legal/murs/7427/7427_66.pdf (SOR 09/30/2022).

[15]    These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7486/ (last visited Sept. 14, 2022) (MUR 7486 Main Page).  The particular records sought by plaintiff are attached as Exhibit F and are available at the following URLs:

https://www.fec.gov/files/legal/murs/7486/7486_09.pdf (vote cert. 06/23/2020);

https://www.fec.gov/files/legal/murs/7486/7486_11.pdf (vote cert. 12/02/2021);

https://www.fec.gov/files/legal/murs/7486/7486_12.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7486/7486_13.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/7486/7486_17.pdf (SOR 12/09/2021);

https://www.fec.gov/files/legal/murs/7486/7486_16.pdf (SOR 08/30/2022);

https://www.fec.gov/files/legal/murs/7486/7486_18.pdf (SOR 09/28/2022).

[16]    These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7672/ (MUR 7672 Main Page), https://www.fec.gov/data/legal/matter-under-review/7674/ (MUR 7674 Main Page), and https://www.fec.gov/data/legal/matter-under-review/7732/ (MUR 7732 Main Page) (last visited Sept. 14, 2022).  The particular records sought by plaintiff are attached as Exhibit G and are available at the following URLs (duplicate records omitted):

https://www.fec.gov/files/legal/murs/7672/7672_15.pdf (vote cert. 01/26/2021);

https://www.fec.gov/files/legal/murs/7672/7672_16.pdf (vote cert. 01/28/2021);

https://www.fec.gov/files/legal/murs/7672/7672_17.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7672/7672_18.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/7672/7672_21.pdf (SOR 05/13/2022);

https://www.fec.gov/files/legal/murs/7672/7672_22.pdf (SOR 09/28/2022).

- MUR 7726 (David Brock, *et al.*).[17]

Combined with the previously-closed MURs 7516 (Heritage Action) and 7422 (Greitens for Missouri, *et al.*), these MURs comprise all of the MURs identified in the May 13, 2022 Commissioner public statement[18] that forms the basis of plaintiff's claims.  (*See* Compl. for Decl.  and Inj. Relief ¶ 35 ("Compl.") (Docket No. 1); *see also* Mem. in Opp'n to the Commission's Mot. to Dismiss and Cross-Mot. for S.J. at 39 ("Motion for Summary Judgment" or "MSJ") (Docket No. 20-1) (seeking "an order 'compel[ling]' the FEC to issue the required notifications to the parties in the eight enforcement matters and publicly release its voting records and any statements of reasons."); Proposed Order at 2 (Docket No. 20-10) (providing same).)  The vote certifications and Statements of Reasons are publicly available for every MUR for which plaintiff sought that relief.

### F.  Post-Release Proceedings in This Case

On September 1, 2022, the Commission filed a notice stating that earlier that week, on August 29, the Commissioners had voted to close several MURs that appeared to meet the criteria of the seven groups of MURs plaintiff alleges were improperly held open and subject to

---

17     These records are publicly available at https://www.fec.gov/data/legal/matter-under-review/7726/ (last visited Sept. 14, 2022) (MUR 7726 Main Page).  The particular records sought by plaintiff are attached as Exhibit H and are available at the following URLs:

https://www.fec.gov/files/legal/murs/7726/7726_14.pdf (vote cert. 01/28/2021);

https://www.fec.gov/files/legal/murs/7726/7726_15.pdf (vote cert. 01/11/2022);

https://www.fec.gov/files/legal/murs/7726/7726_16.pdf (vote cert. 08/29/2022);

https://www.fec.gov/files/legal/murs/7726/7726_19.pdf (SOR 05/13/2022);

https://www.fec.gov/files/legal/murs/7726/7726_20.pdf (SOR 09/29/2022).

18     Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters (May 13, 2022), https://www.fec.gov/resources/cms-content/documents/Redacted_Statement_Regarding_Concluded_Matters_13_May_2022_Redacted.pdf, at 1.

the alleged "concealment policy."  (Docket No. 27.)  The notice included the information that as

a result of the closure of these MUR files, the Commission would soon place on the public

record certifications of Commission votes and Commissioner statements of reasons.  (*Id.* at 2

(citing FEC, Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg.

50,702, 50,703 (Aug. 2, 2016)).)

On the following day, September 2, 2022, plaintiff filed a motion seeking broad

discovery from both the Commission and unidentified third parties based upon the agency's

alleged "bad faith or improper behavior."  (*See* Mot. for Discovery ("Discovery Motion") at 1

(Docket No. 29-1).)   Plaintiff's Discovery Motion offered thirteen broadly-worded "topics" on

which it intended to take discovery to "support its APA claims" with evidence "that the FEC has

offered a pretextual rationale to conceal its misconduct."  (*Id.* at 2, 16.)  The Commission

opposed plaintiff's Discovery Motion, citing (1) the existence of fully-briefed and dispositive

issues regarding this Court's jurisdiction and the legal sufficiency of plaintiff's claims, (2) the

recent closure of all MURs that are the subject of plaintiff's claims, providing plaintiff with all

the relief it sought in this proceeding and mooting its claims, and (3) plaintiff's failure to offer

any probative evidence of bad faith or improper behavior, or to justify discovery in an

administrative review action.  (*See* FEC's Opp'n to Pl.'s Mot. for Disc. ("Discovery Opp.")

(Docket No. 30).)

On September 22, 2022, plaintiff filed Motions to Expedite and Set Hearing (the

"Motion to Expedite"), which sought to have the Court "expedit[e] this case" and "schedul[e] a

hearing on the motion for discovery at the Court's earliest convenience."  (Motion to Expedite at

4 (Docket Nos. 32, 33).)   The Commission opposed this motion, noting that there is no basis to

expedite consideration of any portion of this case except the Commission's fully briefed motion

to dismiss, and that plaintiff currently has access to all the materials sought in its Complaint. (*See* FEC's Opp. to Pl's Mot. to Expedite at 1-2 ("Expedite Opp.") (Docket Nos. 35, 36).)

On October 3, 2022, plaintiff filed a notice with this Court purporting to offer additional evidence of the Commission's bad faith.  (*See* Notice of Additional Evidence of the Federal Election Commission's Bad Faith and Improper Behavior ("Notice of Additional Evidence") (October 3, 2022) (Docket No. 34).)  The Notice of Additional Evidence acknowledged that "on September 30, 2022, the [Commission] made public the files in several [MURs] that were subject to the concealment policy challenged in this case."  *Id.* at 1 (listing MURs).  The Notice of Additional Evidence then focused on a selection of tweets by FEC Commissioner Ellen Weintraub explaining her votes in these matters, which plaintiff styled as "additional evidence of the Commission's bad faith and improper behavior[.]"  *Id.*

On October 4, 2022, Commissioner Weintraub issued a public statement that addressed issues related to the voting in the MURs about which plaintiff has complained in this case.  *See* Statement of Commissioner Ellen L. Weintraub on the Voting Decisions of FEC Commissioners at 1-2, October 4, 2022 ("Weintraub Statement").[19]  In her statement Commissioner Weintraub explained her views that administrative complaints are not dismissed following a single vote on the merits of the complaint (*id.* at 4-5, 7-13), maintaining the confidentiality of documents in such open matters does not constitute "concealment" (*id.* at 4, 13), and declining to authorize the Commission to defend itself in litigation pursuant to section 30109(a)(8) is permissible and contemplated by FECA (*id.* at 13-15).

---

[19]    *Available at* https://www.fec.gov/resources/cms-content/documents/2022-10-04-ELW-Statement-on-Voting-Decisions.pdf.

**ARGUMENT**

In this action plaintiff Heritage Action sought certain records regarding a set of administrative enforcement matters that were before the Commission.  The Commission showed earlier that the Court has no jurisdiction to consider plaintiff's complaint, which also fails to state a claim under the Administrative Procedure Act ("APA") and the mandamus statute.  (MTD; FEC's Reply in Supp. of Its Mot. to Dismiss ("Reply") (Docket No. 23).)  But in any case, the agency proceedings that are the subject of plaintiff's claims have now all concluded, and plaintiff has access to all the records it sought, including vote certifications and statements of reasons in each of the MURs at issue.  Plaintiff does not allege that it is currently a respondent in any Commission proceeding, nor that it is likely to be a respondent in *any* future FEC proceeding, let alone a proceeding that would be in the specific procedural posture that plaintiff alleges was the case in the handful of MURs at issue here.  Moreover, at no point has plaintiff offered evidence of anything resembling an actual agency policy to conceal records, as opposed to activities in a small fraction of now-concluded FEC proceedings.  Given that all eight of the groups of matters about which plaintiff complained are all now in the status plaintiff had sought, it is clear that there is no "policy" for the Court to address.  Because plaintiff's claims are now moot in their entirety, they should be immediately dismissed.

I.      **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint.  The party claiming subject matter jurisdiction bears the burden of demonstrating that jurisdiction exists.  *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008).  When reviewing a motion to dismiss for lack of subject matter jurisdiction, each court has "'an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority.'"  *Jones v. Ashcroft,* 321 F. Supp. 2d 1, 5 (D.D.C. 2004)

17

(citation omitted).  In evaluating such motions, courts review the complaint liberally and grant plaintiffs the benefit of all inferences that can be derived from the facts alleged.  *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir. 2004).  To determine whether it has jurisdiction over a claim, the court may consider materials outside the pleadings.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and a constitutional requirement under Article III.  *Akinseye v. District of Columbia,* 339 F.3d 970, 971 (D.C. Cir. 2003).

The Rules permit the Court to determine "at any time" that it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).[20]  If the Court makes such a determination, it "must dismiss the action."  *Id.*  "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception," since "[w]ithout jurisdiction the court cannot proceed at all in any

---

[20]    Challenges to subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506 (2006).  *See, e.g.*, *Calderon v. Berryhill*, Civ. No. 17-494, 2019 WL 95565, at *2 (D.D.C. Jan. 3, 2019) (explaining that "'a question of subject matter jurisdiction may be presented by any interested party at any time throughout the course of the lawsuit' by any means") (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1384 & 1393 (3d ed. 2018)); *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 474 (D.C. Cir. 1976) ("Parties cannot waive subject matter jurisdiction by their conduct or confer it on the court by consent, and the absence of such jurisdiction can be raised at any time.") (citations omitted).

cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

## II.     PLAINTIFF'S CLAIMS ARE MOOT AND SHOULD BE DISMISSED

### A.     A Case Is Moot When There Is No Longer a Live Controversy

To have Article III standing a plaintiff must establish: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Where a plaintiff asserts a procedural right, he must show that he has suffered a personal and particularized injury that impairs one of his concrete interests.  *Int'l Bhd. of Teamsters v. TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005).  "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right in vacuo — is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Under the Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317 (1988).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990)); *see Clark v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) ("Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in

the future.") (quotation marks and citations omitted).  Further, "[w]hen the challenged harm is

prospective, courts face the additional hurdle of assuring themselves that its likelihood is not too

far flung, lest imminence . . . be stretched beyond its purpose to create a controversy where none

exists." *Klayman v. Obama*, 142 F. Supp. 3d 172, 184 (D.D.C. 2015) (citing *Lujan*, 504 U.S. at

564 n. 2) (internal quotation marks omitted).  Consequently, the "threatened injury must be

certainly impending" to prevent litigation of illusory claims. *Id.* (citing *Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 409 (2013)).  While the movant has the burden of proving mootness, a

plaintiff must defend a motion to dismiss brought under Rule 12(b)(1) by proving by a

preponderance of the evidence that the court has jurisdiction to hear its claims. *Khadr v. United*

*States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### B.    Plaintiff Has Attained All of the Relief It Sought in This Litigation

In this case, plaintiff has received all documents it sought in its Complaint.  The entirety

of the harm alleged in this proceeding stems from the Commission's supposed failure to disclose

vote certifications and statements of reasons in a limited subset of enforcement proceedings.

This is the alleged cause of both the "informational injury" and the "litigation injury" that form

the basis of plaintiff's claims to standing in this lawsuit.  Plaintiff's request for declaratory

judgment is also moot because plaintiff is "currently in a position that is practically no different

from any other" entity that engages in political activities, and it has not demonstrated that a

decision in this case will have any impact on its rights in other proceedings. *Aulenback, Inc. v.*

*Fed. Highway Admin.*, 103 F.3d 156, 162 (D.C. Cir. 1997).  Plaintiff thus cannot demonstrate a

"personal and particularized injury that impairs one of [its] concrete interests," *Teamsters v. TSA*,

429 F.3d at 1135, and no decision of this Court could "presently affect" plaintiff's rights, *Clark*,

915 F.2d at 701.

### 1.    Plaintiff's Request for Documents Is Moot

Plaintiff is now in possession of all the information it sought in this litigation.  The only

information plaintiff requested that the Commission disclose consists of closure notifications,

voting records, and statements of reasons for MUR 7516 and the other MURs plaintiff alleges

were improperly held open.  (Compl. at 28 (Prayer for Relief); MSJ at 39 (requesting an order

compelling the FEC "to issue the required notifications to the parties in the eight enforcement

matters and publicly release its voting records and any statements of reasons.") (Proposed Order

at 2 (Docket No. 20-10) (providing same).)  All these materials have been publicly available

since late September 2022, and indeed the Commission is providing them with the instant

Motion.  *See supra* pp. 10-14 & Exhs. A-H.  Plaintiff itself has in fact acknowledged the

Commission's disclosure of these documents in its recent notice to the Court.  (*See* Notice of

Additional Evidence at 1 ("Plaintiff Heritage Action for America (Heritage Action) respectfully

notifies the Court that on September 30, 2022, the Federal Election Commission (FEC or

Commission) made public the files in several Matters Under Review (MUR) that were subject to

the concealment policy challenged in this case.") (listing MURs).)

This disclosure indisputably alleviates all purported "harm" stemming from plaintiff's

alleged "informational injury[.]"[21]  (Compl. ¶ 74.)  In its Complaint plaintiff alleged that "[t]he

denial of this information causes Heritage Action to suffer the type of harm the disclosure

provisions are meant to prevent, because Heritage Action is denied information regarding its

continued exposure to enforcement actions and civil liability."  (*Id*.)  Plaintiff elsewhere

---

[21]     As the Commission has articulated elsewhere, plaintiff never suffered an "informational injury" sufficient to establish Article III standing with respect to MURs to which it is not a party. (MTD at 18-19; Reply at 9-12; MSJ Opp. at 21-23.)  But even assuming, *arguendo*, that such injury ever existed, it has been fully cured by the recent release of MUR materials, for the reasons articulated herein.

suggested that it has a generalized interest in understanding "how the Commission is enforcing FECA in these matters[.]"  (MSJ at 15.)  Whatever the merits of that claim, the information the Commission has provided has cured this alleged "injury."  Plaintiff has received all documents it sought with respect to each MUR whose handling it has challenged here.  Furthermore, the Commission would not be able to claw back these documents from plaintiff or otherwise prevent access to this information even if it were so inclined.  Plaintiff clearly no longer has a "personal stake in the outcome of the lawsuit," and the lawsuit should accordingly be dismissed.  *Lewis*, 494 U.S. at 477–478.

In analogous situations this Court has held that, where a party acquires all of the information it sought in litigation, it no longer has standing to sue for harms caused by the lack of such information.  In *Citizens for Responsibility & Ethics in Washington v. Federal Election Commission*, 799 F. Supp. 2d 78 (D.D.C. 2011) ("*CREW*"), the court dismissed plaintiffs' claims for lack of standing, noting that the precise information sought by the plaintiffs, in that case the level of spending by a political action committee, was "publicly available online" and "does not appear to be in dispute."  *Id*. at 88.  Likewise here, because Heritage Action does not "allege any specific factual information [it] lack[s] that is not already publicly available[,]" it cannot demonstrate a factual injury.  *Id.* at 89.

The Commission's disclosure also cures any purported injury due to Heritage Action being "wrongfully exposed . . . to a direct civil lawsuit[.]"  (Compl. ¶ 73.)  Plaintiff's Complaint makes no claim that, in order to defend the civil action brought against it by the Campaign Legal Center, it requires more than the notifications, vote certifications and statements of reasons it now possesses.  *Id.* ("Had Defendants sent the required notifications and publicly released the voting records and any statement of reasons in MUR 7516, the public record at the time of Judge

Kelly's March 25, 2022 order would have shown that the Commission did not 'fail … to act' on CLC's administrative complaint against Heritage Action in MUR 7516.").  In fact, having acquired these documents from the Commission in June of 2022, plaintiff made use of them to defend itself in the private right of action against it brought by the Campaign Legal Center.  For example, on July 8, 2022, plaintiff filed a motion to dismiss the private enforcement action initiated against it by the Campaign Legal Center.  Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss, *CLC v. Heritage Action*, Civ. No. 22-1248 (Docket No. 20-1).  This motion attached as exhibits and made frequent reference to the MUR 7516 vote certifications and statements of reasons.  *Id*. (Docket Nos. 20-6, 20-7 (Exhs. E, F)).  Plaintiff has not suggested that it lacks any of the documents necessary to defend itself in this action, or any other.  Plaintiff is therefore in possession of all the information necessary to "defending ongoing legal action[.]"  (Compl. ¶ 74.)

To the extent plaintiff may claim that its purported "litigation injury" would be cured only by the dismissal of the Campaign Legal Center's lawsuit, this is beyond the power of the Court to provide in *this case*, and hence irrelevant to the Court's mootness analysis.  Whether the lawsuit brought by the Campaign Legal Center should be dismissed is indisputably a question for the district court judge in that case, or the Circuit Court on appeal.  *See* Expedite Opp. at 3-4; *see also Lujan,* 504 U.S. at 561 (Article III standing requires proof of harm that will be "redressed by a favorable decision.").

Nonetheless, plaintiff has suggested that "[t]he D.C. Circuit would benefit from this Court's views about whether Judge Kelly was misled by the FEC's bad faith and improper behavior," based on plaintiff's speculation that the Court may "conclude[] that the FEC misled Judge Kelly by concealing its voting records and statements of reasons[.]"  (Motion to Expedite

at 3.)  However, plaintiff's suggestion does not even allege that the Court's "views" will resolve

a live case or controversy here.  Instead, it amounts to a request for an impermissible advisory

opinion.  *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (The courts' Article III power to

decide "Cases" or "Controversies" "require[s] that a case embody a genuine, live dispute

between adverse parties, thereby preventing the federal courts from issuing advisory opinions.")

(citing *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968); *Coleman v. Miller*, 307 U.S. 433, 460 (1939)

(opinion of Frankfurter, J.)).  Any impact of this Court's views on other proceedings is far too

attenuated to confer jurisdiction on *this* Court.

### 2.    Plaintiff's Request for Declaratory Judgment Is Moot

Plaintiff's request for declaratory relief is likewise moot and cannot revive its moot

claims.  While "there is no 'precise test of universal application' for determining whether a

party's request for declaratory relief has become moot … the basic question under Article III of

the Constitution is 'whether the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, *of sufficient immediacy*

*and reality to warrant the issuance of a declaratory judgment.*'"  *Aulenback, Inc. v. Fed.*

*Highway Admin.*, 103 F.3d 156, 161 (D.C. Cir. 1997) (quoting *Preiser v. Newkirk,* 422 U.S. 395,

402 (1975)).  The Court's authority to issue declaratory relief remains subject to the prohibition

on "rendering any judgments unless they resolve a real and substantial controversy admitting of

specific relief through a decree of a conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts."  *Id.* at 162.

Here, there is no longer any "real and substantial controversy" because plaintiff has

received all of the "specific relief" it has sought.  *Aulenback*, 103 F.3d at 162.  Plaintiff has

received all of the MUR information it claimed was improperly concealed, and those matters

have closed.  *See supra* pp. 10-14.  Thus, plaintiff is "currently in a position that is practically no

different from any other" entity that engages in political activities, and the fact that it may be subject to enforcement "on the basis of as-yet undetermined violations" is of no moment. *Aulenback*, 103 F.3d at 162.  Under these circumstances, "declaratory relief from this court would be of little effect."  *Id.*

In a related vein, plaintiff has argued that the collateral consequences doctrine can sustain its lawsuit "because a declaratory judgment that the FEC unlawfully concealed its voting records in MUR 7516, *see* Compl. at 28, would help Heritage Action obtain dismissal of CLC's citizen suit."  (MSJ at 16.)  As noted, however, the Court's power to issue declaratory relief is subject to the same principles of mootness as other claims.  *See supra* pp. 23-24.  Because plaintiff already has the information actually sought in its Complaint, there is no jurisdictional basis for any such judgment.

In addition, plaintiff simply has not shown that a declaratory judgment in this proceeding would have *any* effect on the proceedings in *Campaign Legal Center v. Heritage Action*, Civ. No. 22-1248 (D.D.C.), let alone the kind of "concrete (and potentially devastating) impact" courts typically require to apply the collateral consequences defense to mootness.  (MSJ at 16 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008)).)  Plaintiff's complaint simply assumed, without explanation, that the court in the case alleging unlawful delay, *CLC v. FEC*, Civ. No. 21-0406 (D.D.C.), would have reached a different result had plaintiff been in possession of the information it sought as to MUR 7516 when that matter was decided.  (*See* Compl. ¶ 73.)  In its Motion for Summary Judgment plaintiff argued that "a declaratory judgment in this case would undermine the citizen suit's fictional premise that the FEC failed to act on CLC's administrative complaint by confirming that the agency's concealment of its action on the complaint was unlawful."  (MSJ at 17.)  But plaintiff has not explained why a

determination by a different judge that the Commission's alleged "concealment of its action" was unlawful would be necessary, or even helpful, for the court in that case to determine that the Commission unreasonably delayed in handling the CLC complaint.

In fact, as the Commission has explained (Reply at 5-6), a declaration that the Commission acted unlawfully in failing to release MUR information would have no bearing on the modes of analysis courts employ in reviewing whether the agency has unduly delayed in the MUR itself.  This is because prior non-final Commissioner votes on an administrative complaint, such as whether there was reason to believe violations of FECA occurred, are simply not dispositive in the court's analysis. *See Giffords v. FEC,* Civ. No. 19-1192, 2021 WL 4805478, at *8 (D.D.C. Oct. 14, 2021) (finding timing contrary to law even though the court was aware of prior split votes on whether there was reason to believe violations of FECA occurred, based on the factors in *Common Cause v. FEC*, 489 F. Supp. 738 (D.D.C. 1980) and *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)).  Even where the Commission finds reason to believe a violation occurred, this is only one factor in the court's analysis of whether the Commission unreasonably delayed action on the complaint. *See Citizens for Percy '84 v. FEC*, Civ. No. 84-2653, 1984 WL 6601, at *1 (D.D.C. Nov. 19, 1984) (finding FEC's handling of a MUR contrary to law where the FEC voted to find reason to believe a violation occurred two months after the delay suit was filed and had not yet taken final action); *Democratic Senatorial Campaign Comm. v. FEC*, Civ. No. 95-0349, 1996 WL 34301203, at *1 (D.D.C. Apr. 17, 1996) (finding FEC's handling of a MUR contrary to law even though nearly five months after suit was filed, the FEC voted to find reason to believe and began an investigation).  Plaintiff has failed to establish that the mere disclosure of prior votes in MUR 7516 would have had any impact on the court's prior determination that the Commission

26

unreasonably delayed in handling the administrative complaint, let alone any impact on its rights *at present*, and thus failed to establish its defense to the mootness of its claims.

In any case, "[d]eclaratory judgment is a remedy committed to judicial discretion[,]" and it is clearly not warranted here. *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Energy*, 627 F.2d 289, 292 (D.C. Cir. 1980) (per curiam) (quoting *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324 (1961)). Even where the allegedly harmful behavior "may have some continuing effect[,]" courts "will dismiss the matter … pursuant to the court's discretionary authority" where "the present controversy had become [] attenuated and remote[.]" *Id.* In this case, any possible impact declaratory judgment might have at this stage of proceedings is speculative and attenuated. Heritage Action has not established that such a judgment would impact the lawsuit brought against it by the Campaign Legal Center, nor explained why the judge in that proceeding is not capable of considering and addressing its arguments in that action. And for the reasons detailed *infra* p. 30, plaintiff has provided no evidence that an agency policy of "concealment" exists, much less that it is likely to be applied to plaintiff in the future. Thus, even if a declaratory judgment is not deemed to be entirely ineffectual, the Court should nonetheless exercise its discretion and dismiss this matter on prudential grounds.

In sum, because plaintiff now has the information it seeks as to all MURs at issue here, interim events have ended the effects of the alleged harm to plaintiff, and the first requirement for mootness is plainly met. *See Doe v. Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982). There is no longer any possibility that the alleged harm would be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561.

**C.** **Plaintiff Has No Reasonable Expectation That the Alleged Wrong Will Be Repeated**

Given that Heritage Action is clearly in possession of all the relief it sought in this matter, the only way it can avoid a finding of mootness is to demonstrate that it has a "reasonable expectation . . . that the alleged violation will recur." *Doe,* 696 F.2d at 111 (internal citations omitted).  Plaintiff clearly cannot make such a showing.  It has not plausibly alleged that the Commission ever had a policy to unlawfully conceal enforcement records, let alone that such a policy is likely to be followed in the future in a way that would cause harm to plaintiff.

**1.** **There Is No Evidence That Plaintiff Will Suffer the Harm It Alleges in the Future by Being Subject to Any FEC Enforcement Proceeding, Much Less One in the Specific Procedural Posture It Has Identified Here**

Plaintiff does not allege that it is currently a party in or subject to any FEC enforcement proceeding, nor that it is likely to be in the future.  However, even if plaintiff could do so, this would not be enough.  To avoid a dismissal on mootness grounds plaintiff must demonstrate that the "threatened injury," here the alleged failure to disclose documents in a MUR that has been effectively terminated, "must be certainly impending[.]" *Klayman*, 142 F. Supp. 3d at 184 (citing *Clapper*, 568 U.S. at 409).  Simply put, plaintiff has offered no evidence to suggest that it will again suffer the injuries it has alleged occurred here in only a limited number of MURs.

Plaintiff's only argument regarding the possibility of future injury is that the information it seeks "is vital to a party like Heritage Action that, while not a political committee, regularly engages in the public debate on important issues and policy makers that could expose it to FEC complaints or disclosure obligations and is currently defending a citizen suit alleging a violation of FECA." (MSJ at 15.)  However, the mere fact that plaintiff engages in activity subject to public laws and regulations cannot meet its burden to demonstrate that the alleged wrong will be repeated for purposes of avoiding mootness. *See Aulenback*, 103 F.3d at 162 (finding claims

moot even where plaintiff might be subject to enforcement "on the basis of as-yet undetermined violations" because plaintiff was "currently in a position that is practically no different from any other" entity subject to public laws).  And a party like plaintiff may not invoke "the specter of continuing legal harm" as a defense to mootness "when such harm is merely hypothetical and speculative."  *In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005) (citing *Koppers Indus., Inc. v. U.S. E.P.A.*, 902 F.2d 756, 758 (9th Cir.1990)).

Courts have repeatedly found that the kind of speculation in which plaintiff engages, without evidence, that it "may be a potential defendant in a future investigation" is insufficient to support jurisdiction under Article III.  *See, e.g., Paging Sys., Inc. v. F.C.C.*, No. 10-1097, 2010 WL 5121962, at *1 (D.C. Cir. Aug. 30, 2010) (per curiam) (granting motion to dismiss) ("Bare allegations are insufficient . . . to establish . . . standing to seek judicial review of administrative action.") (citing *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)); *Cato Inst. v. Sec. & Exch. Comm'n*, 4 F.4th 91, 96 (D.C. Cir. 2021) (affirming lower court's grant of motion to dismiss for lack of standing) ("When assessing standing at any stage of the litigation, we do not accept inferences that are unsupported by the facts alleged in the complaint.") (citing *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019)).  The mere theoretical possibility of future enforcement proceedings cannot suffice, because any "threatened injury must be certainly impending."  *Klayman*, 142 F. Supp. 3d at 184 (citing *Clapper*, 568 U.S. at 409); *see Belmont Abbey Coll. v. Sebelius*, Civ. No. 11-1989 (JEB), 2012 WL 3861255, at *3 (D.D.C. Sept. 5, 2012) ("The threat of future litigation is inadequate to satisfy the imminent-injury component of the standing doctrine.") (citing *City of Orville v. FERC*, 147 F.3d 979, 987 (D.C. Cir. 1998)).  And as noted *supra* pp. 23-24, requests for declaratory relief are subject to these principles.  *See Aulenback*, 103 F.3d at 161 ("[T]he basic question under Article III of the

Constitution is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*'") (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)).

In sum, recent developments have provided plaintiff with all of the relief it seeks, and as a result plaintiff is in a position that is practically no different from any other entity that engages in political activities.  Plaintiff has offered no evidence to suggest it will be the subject of future enforcement proceedings, let alone that it will be denied documents in the manner that it has alleged here.  Plaintiff thus faces no "cognizable danger of recurrent violation" that could justify declaratory relief in this case.  *Chamber of Commerce*, 627 F.2d at 292.

> **2.      The Voluntary-Cessation Exception to Mootness Does Not Apply, and This Case Would Be Moot Even If the Exception Did Apply**

Plaintiff has argued that this matter was not moot because "the FEC cannot dodge judicial review of its concealment policy by voluntarily disclosing records in MUR 7516 while maintaining the policy in other cases" (MSJ at 18), but that claim is insufficient for plaintiff to avoid mootness here.  It is true that an exception to mootness applies when a defendant's "voluntary conduct" is "[t]he only conceivable basis for a finding of mootness," and that such voluntary cessation of a challenged practice does not moot a case unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted).  Nevertheless, this matter is moot, both because this exception does not apply, and because the facts of this case easily meet the standard for mootness resulting from a defendant's voluntary cessation of allegedly harmful conduct.

*First*, the voluntary cessation exception to mootness does not apply because the

Commission has never had a "concealment policy," hence there is no wrongful conduct to cease.

The Commission previously detailed the history of its enforcement proceedings, which belies

plaintiff's efforts to establish a general concealment policy through anecdotes.  (*See* MTD at 23-

25.)  For instance, in the roughly four years since the administrative complaint against plaintiff in

MUR 7516 was filed, the agency has closed at least 594 MURs.[22]  Plaintiff alleged — without

sufficient evidence — that seven MURs had been wrongly held open, but even assuming the

truth of that claim, seven matters out of 594 is far short of the threshold necessary to establish

that the Commission ever adopted a "policy" that can meet the APA's requirement to identify a

"final … discrete agency action[.]"  (*See* MTD at 20-26; Reply at 17-20; MSJ Opp. at 34-37.)

Indeed, plaintiff has not even alleged that a majority of FEC Commissioners favored such a

course of action, and three Commissioners cannot establish any policy or regulation on behalf of

the agency.  *See* 52 U.S.C. § 30106(c) ("All decisions of the Commission with respect to the

exercise of its duties and powers under the provisions of this Act shall be made by a majority

vote of the members of the Commission.").  The Commission cannot voluntarily terminate a

policy that was never in place.

*Second*, even assuming *arguendo* that plaintiff had identified a "practice" or "policy" by

the FEC to conceal records,  it was not ended in response to this lawsuit or any other.  The

voluntary-cessation exception to mootness is aimed "at party manipulation of the judicial process

through the false pretense of singlehandedly ending a dispute," and thus "presupposes that the

---

[22]     FEC, Status of Enforcement – Fiscal Year 2022, Second Quarter (01/01/22-03/31/22) 4,
https://www.fec.gov/resources/cms-
content/documents/Status_of_Enforcement_Second_Quarter_2022_05-06-22_Redacted.pdf
(reflecting matters closed in the agency's fiscal years 2019-21 and first two quarters of fiscal
year 2022).

infringing party voluntarily exercises its own unilateral power not only to terminate the suit and evade judicial review, but also to 'pick up where he left off' and complete the devious 'cycle' after the litigation is dismissed." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Here, the reason for the closure of the MURs at issue here is public and straightforward. As the Commission has previously articulated, the composition of the Commission recently changed, with Dara Lindenbaum sworn in as Commissioner on August 2, 2022. *See supra* pp. 10-11. Soon thereafter, on August 29, 2022, there were successful votes to close the file in each of the MURs at issue that had not already closed. During a committee hearing before the U.S. Senate in April of 2022 regarding Commissioner Lindenbaum's nomination to the Commission, Ms. Lindenbaum clearly expressed her view that such proceedings should be closed. *See supra* p. 10 & n.11. These events establish that it was simply a difference in views between Commissioner Lindenbaum and her predecessor regarding the best approach to handling split votes in a handful of enforcement matters, rather than any effort to manipulate this litigation, that drove the dismissal of these MURs. On the other hand, plaintiff has offered no evidence that the Commission closed the MURs at issue to evade judicial review, nor has it rebutted the straightforward explanation provided above. Thus, there is no evidence that the Commission sought to moot plaintiff's lawsuit with its "voluntary conduct." *Friends of the Earth*, 528 U.S. at 189.

In fact, the Commission's longstanding practice is to resolve MURs in a timely way and then disclose materials important to its decisions in accord with its established disclosure policy. *See supra* pp. 1-4. Far from holding matters open in an aberrant way, the Commission has

continued the regular closing of matters, including an additional 137 MURs in the two most

recent fiscal quarters.[23]  Indeed, the agency closed more MURs in its most recent fiscal year than

in any year since 1995.[24]  Just as there is no evidence that the Commission ever had a

"concealment policy," plaintiff has offered no evidence that the Commission will seek in the

future to "pick up where [it] left off" with regard to the type of events about which plaintiff

complains, and such an inference that would be highly implausible here.  *Guedes*, 920 F.3d at 15

(quoting *Already, LLC*, 568 U.S. at 91).  The sole evidence that plaintiff has offered as to the

Commission's future intentions are public statements by FEC Commissioner Weintraub

explaining her prior votes not to dismiss certain MURs.  (Notice of Additional Evidence at 1-2

and Exh. A.)  Recently, Commissioner Weintraub issued a public statement offering a more

comprehensive explanation of her votes on matters including those at issue here, such as votes to

close the administrative file and votes to maintain the confidentiality of certain records.  *See*

*supra* pp. 15-16 (describing Weintraub Statement).  But on a Commission with six members, one

Commissioner is not empowered to enact such a course of action on her own. *See* 52 U.S.C.

§§ 30106(c), 30107(a); *cf. Guedes*, 920 F.3d at 15 ("implementing this course lies beyond the

unilateral legal authority of any of the named defendants").  Moreover, the MURs at issue here

were recently closed by the Commission — an action which has customarily required four votes

---

[23]      FEC, Status of Enforcement – Fiscal Year 2022, Third Quarter (04/01/22-06/30/22) 4
https://www.fec.gov/resources/cms-
content/documents/Status_of_Enforcement_for_the_Third_Quarter_FY_2022.pdf (noting 64
matters closed);  FEC, Status of Enforcement – Fiscal Year 2022, Fourth Quarter (07/01/22-
09/31/22) 4 https://www.fec.gov/resources/cms-
content/documents/Status_of_Enforcement_Report_for_the_Fourth_Quarter_of_FY_2022.pdf
(noting 73 matters closed).

[24]      FEC, Enforcement Statistics for Fiscal Years 1977-2023
https://www.fec.gov/resources/cms-
content/documents/enforcementstats1977to2023_mBEYxUM.pdf.

— despite Commissioner Weintraub's opposition to closing some (though not all) of these files. Whatever the significance of the handling of the handful of now-closed MURs at issue here, there is certainly no evidence of any ongoing Commission "policy" with regard to the claims in plaintiff's complaint.

      **Third**, even assuming the FEC was required to meet the heightened burden for mootness as a result of its voluntary cessation of harm, that burden is easily met here.  Even where the voluntary-cessation doctrine applies, a matter is moot "once it is 'absolutely clear' that challenged conduct cannot 'reasonably be expected to recur[.]'"  *Already, LLC*, 568 U.S. at 97 (quoting *Friends of the Earth*, 528 U.S. at 190; *Lujan*, 504 U.S. at 560).  In such cases "the fact that some individuals may base decisions on 'conjectural or hypothetical' speculation does not give rise to the sort of 'concrete' and 'actual' injury necessary to establish Article III standing." *Id.*  In other words, if there is no reasonable basis to believe the challenged conduct will recur, mootness is established, even if it was the result of a defendant's voluntary conduct.

      Because the Commission never had nor carried out a "concealment policy," there is no reason to suspect that the alleged policy is likely to recur with respect to *any* respondent, let alone plaintiff in particular, other than the reasoned views of a single Commissioner who cannot unilaterally impose such a policy at the Commission.  *See* 52 U.S.C. § 30106(c).  Plaintiff has the documents it sought with respect to all MURs it claims were improperly held open, and the Commission could not now conceal these documents even if it were inclined to do so.  Even where a party must meet a heightened burden to show mootness due to its voluntary cessation of conduct, a claim is still moot where it is entirely "speculative" that any similar claim would arise in the future.  *Deakins v. Monaghan*, 484 U.S. 193, 200, n. 4 (1988) (dismissing matter as moot

because the challenged action, pursuing a claim in court, could not be resumed in "this or any subsequent action," as opposed to one in which a defendant is "free to return to his old ways.").

## CONCLUSION

For the foregoing reasons, plaintiff's complaint should be dismissed in its entirety.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Greg J. Mueller (D.C. Bar No. 462840)
Attorney
gmueller@fec.gov

*/s/ Christopher H. Bell*
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
January 4, 2023                              (202) 694-1650

35

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, I served the foregoing pursuant to Fed. R. Civ. P.

5(b)(2)(E) on counsel of record, as a registered ECF user, through the Court's ECF system.

_/s/ Christopher H. Bell_
Christopher H. Bell (D.C. Bar No. 1643526)
Attorney
chbell@fec.gov

36