**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERITAGE ACTION FOR AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:22-cv-01422 (CJN) |
| FEDERAL ELECTION COMMISSION, et al., | |
| *Defendants*. | |

| | |
|---|---|
| CAMPAIGN LEGAL CENTER, | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:22-cv-01248 (CJN) |
| HERITAGE ACTION FOR AMERICA, | |
| *Defendant*. | |

**<u>MEMORANDUM OPINION</u>**

These interrelated cases arise out of what the Court of Appeals has described as a "deadlock dismissal" at the Federal Election Commission—a 3-3 vote of the Commissioners on whether there was a "reason to believe" the complaint Campaign Legal Center filed at the Commission against Heritage Action for America. For the reasons discussed below, the Court concludes that it is unlawful for the Commission to fail to disclose such a deadlock dismissal (as it failed to do here). The Court also concludes that it lacks jurisdiction over the Center's separate suit against Heritage Action.

1

## I.    BACKGROUND

### A.    The Federal Election Commission and Federal Election Campaign Act

The Federal Election Campaign Act "seeks to remedy any actual or perceived corruption of the political process." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 14 (1998).  The Act imposes various restrictions "on the sources and amounts of contributions made 'for the purpose of influencing any election for Federal office,'" *End Citizens United PAC v. Fed. Election Comm'n*, 69 F.4th 916, 918 (D.C. Cir. 2023) (quoting 52 U.S.C. § 30101(8)(A)(i)), and directs the Federal Election Commission to enforce those statutory restrictions.  The Commission is an independent federal agency composed of six voting members.  *See* 52 U.S.C. § 30106.  It is "inherently bipartisan," *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981), as no more than three voting members can be affiliated with the same political party, 52 U.S.C. § 30106(a)(1).

The Campaign Act authorizes the Commission to institute investigations of possible violations, *see id.* § 30109(a)(1)–(2), and, if there is probable cause that a violation occurred, to initiate civil enforcement actions in federal district courts, *id.* §§ 30106(b)(1), 30107(a)(6), (e), 30109(a)(6).  These investigative and enforcement provisions are triggered by a complaint from "[a]ny person who believes a violation of [the Campaign] Act . . . has occurred." *Id.* § 30109(a)(1).  Upon receipt of such a complaint, the Commission notifies the respondent alleged to have violated the Campaign Act and provides the respondent a chance to demonstrate in writing that no violation occurred.  *Id.*

Before investigating the allegations, the Commission must first "determine[], by an affirmative vote of [four] of its members, that it has reason to believe that a person has committed, or is about to commit," a violation of the Act.  *Id.* § 30109(a)(2).  If four Commissioners vote that there is such "reason to believe," the Commission notifies the respondent and proceeds to

investigate the allegations. *Id.* After investigation, the commissioners must again vote, this time on the question whether there is probable cause to believe that a violation occurred. "[I]f the Commission determines, by an affirmative vote of [four] of its members, that there is probable cause to believe that" a violation occurred or is about to occur, the Commission is authorized to correct or prevent the violation. *Id.* § 30109(a)(4)(A)(i). But "[i]f the Commission is unable to correct or prevent" the violation, "the Commission may"—again "upon an affirmative vote of [four] of its members"—"institute a civil action for relief" in federal district court. *Id.* § 30109(a)(6)(A).

The Campaign Act provides that, with one exception, "the power of the Commission to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act." *Id.* § 30107(e). That one exception allows a complainant "aggrieved by an order of the Commission dismissing a complaint [he] filed . . . or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed" to file a petition with the U.S. District Court for the District of Columbia. *Id.* § 30109(a)(8)(A). Such petitions are sometimes referred to as "delay suits." *See, e.g.*, *Campaign Legal Ctr. v. 45Committee, Inc.*, No. 22-cv-1115, 2023 WL 2825704 at *2 (D.D.C. Mar. 31, 2023). If the court in a delay suit concludes that the Commission's "dismissal of the complaint or the failure to act is contrary to law," the court may "direct the Commission to conform with [the court's] declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C). If the Commission fails to comply with that direction, the complainant may then bring "a civil action to remedy the violation involved in the original complaint." *Id.*

### B.    Procedural History

The two suits considered here began with the filing of a complaint by Campaign Legal Center at the Commission on October 16, 2018. Compl. (Oct. 16, 2018), MUR 7516 Pub. Rec.,

available at https://www.fec.gov/data/legal/matter-under-review/7516/.  Campaign Legal Center alleged that Heritage Action had violated 52 U.S.C. § 30104(c) by failing to disclose the names of donors whose funds were used to pay for independent expenditures.  *Id.* at ¶ 23.  The Commission designated the matter as MUR ("Matter Under Review") 7516.  Heritage Action was notified of the complaint the following week.  Notification of Compl. to Heritage Action for Am. (Oct. 22, 2018).

The Commission thereafter held a series of non-public votes on MUR 7516.  In April 2021, the Commission first considered whether there was reason to believe that Heritage Action had violated the Campaign Act.  Ex. B, *Heritage Action*, ECF No. 19-3.  That question garnered only three affirmative votes, with the two Democratic and one Independent Commissioners voting that there was a reason to believe, and the three Republican Commissioners voting that there was not. *Id.*  The same day, the Commission also voted 3-3 (with the same lineup) on whether to close the administrative file.  *Id.*

Having heard nothing from the Commission and more than 120 days having passed from the lodging of its complaint, the Center filed a delay suit against the Commission in February 2021. *See* Compl., *Campaign Legal Ctr. v. Fed. Election Comm'n*, No. 21-cv-406 ("*Delay Suit*"), ECF No. 1.  The Center alleged that the Commission's failure to act on the Center's complaint against Heritage Action was contrary to law.  *Id.* at 1–2 (citing 52 U.S.C. § 30109(a)(8)(A)).

The Commission did not appear to defend that suit.  It did take another non-public vote in January 2022 on whether to close the file, which again resulted in a 3-3 vote.  Ex. D, *Heritage Action*, ECF No. 19-5.  Having heard nothing from the Commission, on March 25, 2022, Judge Kelly held that the Commission's "failure to act on [the Center's] administrative complaint [was]

contrary to law" and ordered the Commission to act on the Center's complaint within 30 days. Order at 2, *Delay Suit*, ECF No. 16.

Thirteen days after Judge Kelly's order, the Commission took four more votes. Two reason-to-believe votes failed to garner the necessary affirmative votes of four commissioners— those votes were 3-2 and then 3-1—and two votes to close the file split 3-3. Certification (Apr. 7, 2022), MUR 7516 Pub. Rec. The Commission did not notify either the Center or Heritage Action of any of these votes. The Commission also did not appear in the delay suit, notify Judge Kelly of these votes, or otherwise respond to his March 25, 2022, order. On May 3, 2022, having still heard nothing from the Commission, Judge Kelly determined that the Commission had failed to conform to his earlier order and granted the Center permission to bring a civil action against Heritage Action under section 30109(a)(8)(C). Order, *Delay Suit*, ECF No. 23.

On May 5, 2022, the Center sued Heritage Action in one of the suits addressed by this Memorandum Opinion. *See* Compl., *Campaign Legal Ctr.*, ECF No. 1. Heritage Action in turn sued the Commission, arguing that the Commission's failures to notify or disclose its various votes regarding MUR 7516 were contrary to law and arbitrary and capricious and that the Commission "unlawfully withheld or unreasonably delayed" notice of its termination of MUR 7516 and the release of its voting records and statements of reasons. Compl. at ¶¶ 80–81, 90, 93, 98–99, 103 (citing 5 U.S.C. § 706(1)–(2)), *Heritage Action*, ECF No. 1.

After both suits were filed, the Commission produced to Heritage Action (in response to a pending FOIA request) unredacted copies of records relating to the various votes described above. *See* Ex. E, *Heritage Action*, ECF No. 19-6. On June 7, 2022, the Commission voted unanimously to close the administrative file, and two days later notified the Center and Heritage Action of that

dismissal.  *See* Ex. F, *Heritage Action*, ECF No. 19-7; Certification (June 7, 2022), MUR 7516 Pub. Rec.

The administrative file became public on July 13, 2022.  The statement of reasons filed on May 13, 2022, by Commissioners Dickerson, Cooksey, and Trainor—each of whom had voted that there was no reason to believe the complaint against Heritage Action—explained that their votes were "an exercise of prosecutorial discretion" in part because Heritage Action's disclosure reports were filed "at a time when the meaning of the provision of the law at issue was in flux." *See* Ex. C at 3, *Heritage Action*, ECF No. 19-4.  A statement of reasons filed on July 7, 2022, by Commissioners Broussard and Weintraub, who cast affirmative reason-to-believe votes, explained that they believed that the law was clear that donor disclosure was required when Heritage Action filed its reports.  *See* Ex. H at 4, *Heritage Action*, ECF No. 19-9.

Commissioners have also made public statements about some of the issues presented here. Commissioners Dickerson, Cooksey, and Trainor released a joint statement in May 2022 about the Commission's treatment of "concluded enforcement matters."  *See* Ex. A, *Heritage Action*, ECF No. 19-2.  According to those Commissioners, the historic practice of the Commission had been to unanimously vote to close the file upon a deadlocked 3-3 reason-to-believe vote and to authorize the Commission to defend itself in subsequent legal challenges brought by complainants.  *Id.* at 1. But, they claimed, that practice had "eroded" in recent years; as they put it, in eight enforcement matters, their colleagues "made the unprecedented decision to refuse to close the file—even though the Commission took final votes on the merits of these complaints more than a year" prior.  *Id.* at 1–2.  The Commissioners accused their colleagues of "weaponizing a nominal housekeeping act [of closing the file], not to allow future action, but to create the public impression that we have not started our work, even though we have actually finished it."  *Id.* at 4.

Commissioner Weintraub, for her part, described these same events as "using the small amount of leverage that [she] ha[s]."  *See* Ex. B. (Weintraub Article), *Heritage Action*, ECF No. 29-3.  In reference to not closing the files with deadlocked reason-to-believe votes and then not defending the agency in court, Weintraub stated:  "It is not like I think the courts are automatically going to come to the same decision I would come to . . . .  But I think it's got a better shot."  *Id.*

Back in these cases, both Heritage Action and the Commission filed motions to dismiss the actions against them.  *See* Mot. to Dismiss, *Campaign Legal Ctr.*, ECF No. 20; 1st Mot. to Dismiss, *Heritage Action*, ECF No. 17; 2d Mot. to Dismiss, ECF No. 39.  In its suit against the Commission, Heritage Action also filed a Cross-Motion for Summary Judgment, ECF No. 19, and several motions regarding discovery, ECF Nos. 29, 32, & 33.  The Court held a hearing on all pending motions on April 26, 2023.

## II.    LEGAL STANDARDS

The Court "must dismiss a case when it lacks subject matter jurisdiction."  *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 28 (D.D.C. 2012).  The "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Id.*  To determine whether the Court has subject matter jurisdiction, the Court may, "when necessary," look beyond the complaint to "undisputed facts evidenced in the record."  *Id.* (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  The Court must also dismiss a complaint if, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015).

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under the Administrative Procedure Act, the Court "shall . . . hold unlawful and

set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).

### III.   ANALYSIS

This discussion proceeds in three parts.   First, the Court addresses whether it has jurisdiction over Heritage Action's claims against the Commission.   Second, the Court considers whether the Commission's failure to disclose a "deadlock dismissal" (as it failed to do here) is lawful.   And third, the Court addresses whether it has jurisdiction over the Center's claims against Heritage Action.

### A.   The Court Has Jurisdiction Over Heritage Action's Claims Against the Commission.

### 1.   Heritage Action's Claims Are Not Moot.

The Commission argues that Heritage Action's claims against it are moot.   According to the Commission, its June 2022 disclosures remedied Heritage Action's alleged informational and litigation-exposure injuries.   2d Mot. to Dismiss at 20–24, *Heritage Action*, ECF No. 39.   The Commission also argues that Heritage Action's request for declaratory judgment is moot because any potential benefit to Heritage Action is too speculative and attenuated.   *Id.* at 24–27.   And the Commission argues that no exception to the mootness doctrine applies.   *Id.* at 28–35.

The Court disagrees.   As an initial matter, although the Commission has made the disclosures described above, Heritage Action remains a defendant in the Center's case against it, and thus continues to suffer an injury (having to defend itself against those claims) that has not been remedied by the Commission's recent disclosures.   To help defend itself against from *that* suit, Heritage Action seeks a declaration in its case against the Commission that the Commission's

8

prior failures to disclose were unlawful.  *See, e.g.*, Opp'n to 2d Mot. to Dismiss at 4–6, *Heritage Action*, ECF No. 41.

More important, the Court concludes that exceptions to the mootness doctrine apply here. It is well established that in certain cases, "the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot."  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009).  In particular, "a claim for declaratory relief will not be moot . . . so long as the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine."  *Id.* (quotations omitted).

Heritage Action's claims are capable of repetition yet evading review.  Under this exception, "the plaintiff must demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."  *Id.* at 322.  As to duration, the Court of Appeals has stated that "agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration, so long as the short duration is typical of the challenged action."  *Id.* (quotation omitted).  Here, that is certainly true, as the Campaign Act allows delay suits to be filed after just 120 days of Commission inaction.  52 U.S.C. § 30109(a)(8)(A).

Heritage Action has also established a reasonable expectation that, as a 501(c)(4) organization subject to the Campaign Act's substantive provisions, it will be a respondent before the Commission in the future.  *See* Opp'n to 1st Mot. to Dismiss at 19, *Heritage Action*, ECF No. 19.  Heritage Action was "established to promote and advocate for conservative public policies," *see* Compl. ¶ 15, *Heritage Action*, and engages in political activities likely to trigger future

complaints, *see, e.g.*, Ex. H at 4 (Broussard & Weintraub statement of reasons), *Heritage Action* ("Heritage Action told their donors that the money it was raising would be used to fund independent expenditures on behalf of a specific group of candidates."). This expectation is heightened by the fact that any individual can file a complaint against Heritage Action with the Commission—whether or not the complaint has merit—and trigger the procedures laid out in the Campaign Act. *See* 52 U.S.C. § 30109(a)(1). And because the Commission's deliberations are confidential until disclosure, *see id.* § 30109(a)(12); 11 C.F.R. § 111.21, the Commission could subject Heritage Action to the same informational and litigation-exposure injuries that it suffered here by not disclosing its votes on such a complaint.

Nor is it speculative that this could happen again. Heritage Action has identified at least seven other instances in which the Commission did not disclose a deadlocked reason-to-believe vote, *see* Ex. A at 1, *Heritage Action*, and Heritage Action has proffered some evidence that in all eight examples certain Commissioners acted purposefully and strategically in attempting to keep the votes non-public. *See, e.g.*, *id.*; Weintraub Article, *supra*.

For similar reasons, the voluntary cessation exception applies. That exception "is designed to deter the wrongdoer who would otherwise 'engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). As the Supreme Court has put it, "the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).  As a result, the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."  *Id.* (quotation omitted) (alteration adopted).

The Commission has not met its burden.  While the Commission did voluntarily disclose the MUR 7516, it is certainly not "absolutely clear" that the Commission will disclose all future deadlocked votes.  After all, the Commission has never stated that it will disclose all similar votes in the future; indeed, it insists that non-disclosure is both lawful (perhaps even required) and part of its normal practice.  *See, e.g.*, Opp'n to Mot. for Summ. J. at 23–31, *Heritage Action*, ECF No. 26.  And again, Heritage Action has identified at least seven other similar cases, *see* Ex. A at 1, *Heritage Action*, as well as evidence that certain Commissioners approached these questions purposefully and strategically, *see, e.g.*, *id.*; Weintraub Article, *supra*.

### 2.     The Campaign Act Does Not Preclude Heritage Action's Claims.

The Commission also argues that the Campaign Act precludes judicial review of Heritage Action's Administrative Procedure Act claims.  The Commission does not argue that the Campaign Act expressly precludes those claims, but that it does so impliedly.[1]  In the Commission's view, section 30109(a)(8) of the Campaign Act is the "exclusive mechanism for challenging the Commission's handling of administrative complaints and limits the scope of relief available to" Heritage Action.  *See* Opp'n to Mot. for Summ. J. at 20, *Heritage Action*.  According to the Commission, judicial review under section 30109(a)(8) is available only to complainants; Heritage Action, as a respondent, cannot take advantage of this review.  *Id.* at 18–19.  And, the

---

[1] The Commission clarified at oral argument that it was not arguing that the statute expressly precludes Heritage Action's action, and that the Commission's argument is limited to implied preclusion.  *See* Hearing Tr. 15:18–25, *Heritage Action*, ECF No. 47.

Commission contends, because section 30109(a)(8) provides an "adequate remedy," Heritage Action cannot bring its claims under the Administrative Procedure Act. *Id.* at 19; *see also* 5 U.S.C. § 704 (APA review is available only when the agency action is "made reviewable by statute" or when there is "final agency action for which there is no other adequate remedy in a court").

There is, of course, a "presumption favoring judicial review of administrative action." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). The government bears a "heavy burden" to overcome that presumption, *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 672 (1986), which it "may attempt to satisfy in several ways," such as "pointing to specific language or specific legislative history that is a reliable indicator of congressional intent; by demonstrating congressional acquiescence to a contemporaneous judicial construction barring review; or by drawing inferences of intent . . . from the statutory scheme as a whole, such as when the statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, but not at the behest of others," *see Council for Urological Ints. v. Sebelius*, 668 F.3d 704, 709 (D.C. Cir. 2011) (quotations omitted). As the Court of Appeals has put it, "[t]he absence of any 'explicit statutory authority' purporting to preclude judicial review does not foreclose the Commission's preclusion claim, but it does cut against it." *Unity08 v. Fed. Election Comm'n*, 596 F.3d 861, 866 (D.C. Cir. 2010). And "[t]hat Congress provided for review in circumstances that may have seemed either exceptionally compelling or at risk of being brushed off is feeble support for precluding review in a case where standard principles allow it." *Id.*

The Campaign Act does not impliedly preclude judicial review here. The Act's judicial review provisions regard the Commission's discretionary enforcement of the substantive provisions of the Act. *See* 52 U.S.C. § 30107(e) ("Except as provided in section 30109(a)(8) of this title, the power of the Commission to initiate civil actions under subsection (a)(6) shall be the

exclusive civil remedy for the enforcement of the provisions of this Act."); *id.* § 30109(a)(8) ("Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.").  That the Commission has the exclusive authority to bring civil enforcement actions against respondents—and that private parties may also bring civil enforcement actions in certain limited circumstances pursuant to section 30109(a)(8)—does not, in the Court's view, evidence a congressional intent to preclude judicial review regarding a different issue—whether the Commission violates the Administrative Procedure Act by failing to disclose certain outcomes.  *See infra* Part III(A)(3); *see, e.g.*, *Unity08*, 596 F.3d at 866 (rejecting the argument that the Campaign Act implicitly precluded judicial review of Commission advisory opinions "since the Act contains detailed procedural provisions but fails to provide any private right of action against the Commission except in two circumstances not implicated here"); *Perot v. Fed. Election Comm'n*, 97 F.3d 553, 557–60 (D.C. Cir. 1996) (agreeing that the district court "lacked jurisdiction to adjudicate the validity of the complaints filed with the [Commission] or to order the [Commission] to do so before the . . . debate" but holding that the Campaign Act "has no provisions governing judicial review of regulations, so an action challenging its implementing regulations [could] be brought under the judicial review provisions of the Administrative Procedure Act.").

Additionally, it is not obvious that Heritage Action has an "adequate remedy" under section 30109(a)(8).  *See* 5 U.S.C. § 704.  The Commission acknowledges that only complainants, like Campaign Legal Center, can seek judicial review under section 30109(a)(8); respondents like Heritage Action cannot.  *See, e.g.*, Opp'n to Mot. for Summ. J. at 18–19, *Heritage Action*; *see also*

52 U.S.C. § 30109(a)(8)(A) ("Any *party* aggrieved by an order of the Commission dismissing *a complaint filed by such party* under paragraph (1), or by a failure of the Commission to act on *such complaint* during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." (emphases added)); *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988) (specific judicial review provisions do not bar review under the Administrative Procedure Act when the "relief available" under the specific provisions is "doubtful and limited"). And the Commission does not argue that Heritage Action could challenge the legality of the Commission's non-disclosure in the context of a suit brought by a complainant—such as the suit filed by the Center.[2]

**B.      The Commission's Failure to Disclose a Deadlock Dismissal Is Unlawful.**

Turning to the merits, Heritage Action argues that a reason-to-believe vote that garners only three Commissioner votes is final agency action that terminates the enforcement proceedings and is equivalent to a dismissal that must be disclosed. *See, e.g.*, Cross-Mot. for Summ. J. at 29, *Heritage Action*. Relying on the Campaign Act's requirement that four Commissioners must vote to find reason to believe, the fact that the Act doesn't expressly require a vote to close the file, the Commission's regulations concerning the termination of proceedings when the Commission finds no reason to believe, and Court of Appeals precedent describing 3-3 reason-to-believe-votes as

---

[2] The Commission also briefly argues that Heritage Action cannot pursue its failure-to-act claim under section 706(1) of the Administrative Procedure Act because such claims are only reviewable "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." 1st Mot. to Dismiss at 30, *Heritage Action* (quoting *Orlov v. Howard*, 523 F. Supp. 2d 30, 37 (D.D.C. 2007)). But Heritage Action points to "precise section[s] of the" Campaign Act and Commission regulations "that clearly rein[] in the agency's discretion," and argues that the Commission's actions with respect to MUR 7516 violated those statutory provisions and regulations. *See Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015); Compl., *Heritage Action*, ¶¶ 82–83 (citing 5 U.S.C. § 555(e); 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a)). Therefore, Heritage Action is "entitled to have [the Commission's] current approach ascertained and its lawfulness adjudicated." *See Xie*, 780 F.3d at 408.

"deadlock dismissals," Heritage Action argues that failed reason-to-believe votes terminate the proceedings in front of the Commission and must be disclosed. *Id.* at 29–32. Heritage Action also contends that the Commission's failure to disclose deadlocked reason-to-believe votes "thwarts" the Campaign Act's judicial review process by misleading courts to believe that the Commission has failed to act—a necessary step before delay suits can be filed. *See id.* at 32–33 (citing 52 U.S.C. § 30109(a)(8)(C)). That is, Heritage Action contends, precisely what occurred here before Judge Kelly.

The Commission has a much different view of things. It contends that a deadlocked reason-to-believe vote is not the same thing as a dismissal (in part because the Commission can take several reason-to-believe votes on a complaint), and that in the context of such a deadlock, a separate vote to close the file is required before disclosure. *See* Opp'n to Mot. for Summ. J. at 23–24, *Heritage Action*. According to the Commission, the Campaign Act is ambiguous on these questions, and the Court should defer to the Commission's long-standing interpretation that dismissal is not required and that there must be a separate affirmative vote to close the file and disclose the outcome publicly. *Id.* at 24–27.

The Court agrees with Heritage Action. Start with the statute. Before the Commission can initiate an investigation, or take any further steps toward enforcement, four Commissioners must vote that there is reason to believe a complaint. 52 U.S.C. § 30109(a)(2). And because no further steps (such as further investigation or fact-gathering) can occur without four votes, any future reason-to-believe votes would be based on the exact same evidence already before the Commission for the first vote. In other words, because the Commission "cannot investigate complaints absent majority vote . . . the statute compels [the Commission] to dismiss complaints in deadlock

situations." *See Pub. Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 839 F.3d 1165, 1170 (D.C. Cir. 2016) (citing 52 U.S.C. § 30109(a)(2)).

The Court of Appeals has consistently referred to failed reason-to-believe votes as "deadlock dismissals" and held that such dismissals constitute final agency action. *See, e.g.*, *Democratic Cong. Campaign Comm. v. Fed. Election Comm'n*, 831 F.2d 1131, 1133 (D.C. Cir. 1987) ("Nothing in the text of the [the Campaign Act's] judicial review prescription precludes review of a dismissal due to a deadlock . . . .  We therefore demur to the [Commission's] observation that a 3-2-1 vote decides nothing."); *Common Cause v. Fed. Election Comm'n*, 842 F.2d 436, 449 (D.C. Cir. 1988) ("Requiring a statement of reasons by the declining-to-go-ahead Commissioners at the time when a deadlock vote results in an order of dismissal also contributes to reasoned decisionmaking by the agency."); *Pub. Citizen, Inc.*, 839 F.3d at 1170 ("[R]ecognizing [Commission] deadlocks as agency action does not require this Court to broaden its statutorily-defined jurisdiction; the treatment of probable cause deadlocks as agency action is baked into the very text of the statute."); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 892 F.3d 434, 437 (D.C. Cir. 2018) ("The Commission's dismissal of CREW's complaint constituted the 'agency action' supporting the district court's jurisdiction.  After the Commissioners voted 3 to 3 on whether to begin enforcement proceedings, the Commission closed the administrative file on the case.  The deadlock meant that the Commission could not proceed: under [the Campaign Act], the Commission may pursue enforcement only upon 'an affirmative vote of 4 of its members.'" (citations omitted)).  In fact, the Court of Appeals has distinguished deadlock dismissals at the Commission from deadlocks at other agencies. *See, e.g.*, *Pub. Citizen, Inc.*, 839 F.3d at 1170 (distinguishing deadlocks before the Federal Energy Regulatory Commission from FEC deadlocks).

While the Campaign Act includes specific requirements for reason-to-believe and probable-cause votes, it contains no provision requiring a separate vote to dismiss a complaint. *See generally id.* § 30109.  In light of the Commission's bipartisan design, Congress was surely aware that reason-to-believe (and probable-cause) votes would sometimes result in deadlocks, but Congress did not require a further vote to dismiss or disclose the deadlock.  As the Court of Appeals has stated, the Commission's "voting and membership requirements mean that, unlike other agencies—where deadlocks are rather atypical—[the Commission] will regularly deadlock as part of its *modus operandi*."  *Pub. Citizen, Inc.*, 839 F.3d at 1171.  Moreover, if a deadlocked reason-to-believe vote does not constitute a dismissal, some complaints could remain indefinitely in limbo before the Commission; such a result would be inconsistent with the structure of the Campaign Act, which only divests the Commission of civil enforcement power of the Campaign Act if the Commission dismisses the complaint or fails entirely to act on the complaint within 120 days of filing.  *See* 52 U.S.C. § 30109(a)(8).  Indeed, on the Commission's view, it could have kept its various votes on MUR 7516 non-public, and thus this Court might have proceeded to address the merits of the Center's claims against Heritage Action without even knowing that fewer than four Commissioners had voted that there was reason to believe them.

Moreover, the Commission's regulations themselves equate a failed reason-to-believe vote with a termination of the proceedings before the Commission.  Those regulations state that if "the Commission finds no reason to believe, *or otherwise terminates its proceedings*, the General Counsel shall so advise both complainant and respondent by letter."   11 C.F.R. § 111.9(b) (emphasis added).  And they provide that if "the Commission makes a finding of no reason to believe or no probable cause to believe *or otherwise terminates its proceedings*, it shall make public such action and the basis therefor no later than thirty (30) days from the date on which the

required notifications are sent to complainant and respondent." *Id.* § 111.20(a) (emphasis added).

These regulations thus treat a failed reason-to-believe vote as a termination of the proceedings.

*See id.*[3]

Because a deadlocked reason-to-believe vote is equivalent to a dismissal (or termination),

such a vote requires prompt disclosure. The Administrative Procedure Act requires that "[p]rompt

notice . . . be given of the denial in whole or in part of a written . . . petition . . . made in connection

with any agency proceeding." *See* 5 U.S.C. § 555(e). The Campaign Act similarly requires that

"[i]f the Commission makes a determination that a person has not violated th[e] Act . . . , the

Commission shall make public such determination." 52 U.S.C. § 30109(a)(4)(B)(ii).[4] And the

---

[3] The Commission argues that a deadlocked vote is not a "find[ing]" of no reason to believe because a "find[ing]" requires four votes. *See* Opp'n to Summ. J. at 29–30. But in *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 993 F.3d 880 (D.C. Cir. 2021), the Court of Appeals rejected the argument that enforcement actions *and* nonenforcement actions both require four votes—that "[w]here four votes are unavailable for any option, nothing happens—neither an investigation nor a dismissal—until a bipartisan coalition of four commissioners can come to an agreement." *Id.* at 891. The Court explained that the Campaign Act "specifically enumerates matters for which the affirmative vote of four members is needed and dismissals are not on this list, which suggests that they are not included under the standard construction that *expressio unius est exclusio alterius*." *Id.* And the Court determined that "purposivist policy arguments" could neither "override the unambiguous text, nor can they be reconciled with our previous cases, which have recognized the possibility of 'deadlock dismissals,' namely dismissals resulting from the failure to get four votes to proceed with an enforcement action." *Id.* (citing *Common Cause*, 842 F.2d at 449; *Democratic Cong. Campaign Comm.* 831 F.2d at 1133).

[4] The Commission also argues that a deadlock dismissal is not a "determination" within the meaning of this provision, and argues that a separate, affirmative vote by four Commissioners to close the file must occur before disclosure is required (or perhaps even permitted). *See* Opp'n to Summ. J. at 25–27. The Commission acknowledges that the Campaign Act does not define "determination," but relies on section 30109(a)(4)(A)(i), which uses the term "determine" in the context of four affirmative votes. *See id.* at 25 (quoting 52 U.S.C. § 30109(a)(4)(A)(i)) ("[I]f the Commission determines, by an affirmative vote of 4 of its members, that there is probable cause to believe that any person has committed . . . a violation . . . ."). The Commission also relies on *American Federation of Labor and Congress of Industrial Organizations v. Federal Election Commission*, where the district court explained that "although 'determination' is not defined anywhere in [the Campaign Act], it is ordinarily used to describe a final outcome or decision" and held that "'determination' refers only to the probable cause determination." 177 F. Supp. 2d 48,

implementing regulations require that if enforcement proceedings are terminated, the Commission "shall so advise both complainant and respondent by letter," 11 C.F.R. § 111.9, and "shall make public such action and the basis therefor no later than thirty (30) days from the date on which the required notifications are sent to complainant and respondent," *id.* § 111.20.[5]   Each of these statutory and regulatory provisions requires the Commission to promptly disclose its deadlock dismissals, which the Commission failed to do here.

### C.      The Court Does Not Have Jurisdiction Over Campaign Legal Center's Claims Against Heritage Action.

With respect to Campaign Legal Center's separate suit, Heritage Action argues that the Court lacks jurisdiction over the Center's claims because the Commission did not fail to conform to Judge Kelly's March 25, 2022, order.  *See* Mot. to Dismiss at 25, *Campaign Legal Center*. Heritage Action argues that, at the very least, the Commission's votes on April 7, 2022 constituted agency action that conformed the Commission to that order.  *Id.*; Hearing Tr. 58:22–59:3.  Heritage Action further argues that the two preconditions to bringing a citizen suit—that the Commission's failure to act was "contrary to law" and that the Commission failed "to conform" to Judge Kelly's order, 52 U.S.C. § 30109(a)(8)(C)—are jurisdictional.  Mot. to Dismiss at 21, *Campaign Legal Center*.

The Court agrees.  As noted above, the Court of Appeals has consistently treated deadlock dismissals as final agency action.  *See, e.g.*, *Citizens for Resp. & Ethics in Washington*, 892 F.3d

---

58, 59 n.16 (D.D.C. 2001).  But this argument fails for the same reasons that the Commission's "find[ing]" argument fails—it cannot be reconciled with binding precedent on deadlock dismissals.  *See supra* at n.3.

[5] Because the Court concludes that neither the statute nor the regulations are ambiguous about the disclosure requirement for deadlock dismissals, the Court does not further address the Commission's *Chevron* and *Auer* arguments.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

at 437 ("The Commission's dismissal of CREW's complaint constituted the 'agency action' supporting the district court's jurisdiction."); *Pub. Citizen, Inc.*, 839 F.3d at 1170 ("[R]ecognizing [Campaign Act] deadlocks as agency action . . . is baked into the very text of the statute."). Therefore, at a minimum, the deadlock dismissals that occurred April 7, 2022, *see* Certification (Apr. 7, 2022), MUR 7516 Pub. Rec., conformed the Commission to Judge Kelly's order to act on the complaint within 30 days, 52 U.S.C. § 30109(a)(8)(C).   "Because the Commission timely conformed with the delay court's order, this [C]ourt lacks jurisdiction over [the Center's] citizen suit."  *See Campaign Legal Ctr.*, 2023 WL 2825704 at *5.

In *Perot v. Federal Election Commission*, the Court of Appeals held that these procedural requirements are jurisdictional.  97 F.3d at 557–58.  The Court explained that "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under the [Campaign Act]."  *Id.* at 557.  The Court pointed to section 30107(e),[6] *id.* at 558, which provides that "[e]xcept as provided in section 30109(a)(8) of this title, the power of the Commission to initiate civil actions under subsection (a)(6) shall be the exclusive civil remedy for the enforcement of the provisions of this Act."  52 U.S.C. § 30107(e).  The Court explained that the "elaborate statutory requirements" set forth in section 30109(a) are "jurisdictional" and "must be followed before a court may intervene."  *Perot*, 97 F.3d at 558–59.

The Center argues that *Perot* has no precedential effect in light of *Wilkins v. United States*, 143 S. Ct. 870 (2023).  *See* Resp. to Def.'s Notice of Suppl. Authority at 2, *Campaign Legal Center*, ECF No. 30.  In *Wilkins*, the Supreme Court explained that not all descriptions of issues as "jurisdictional" should be treated as binding precedent:

---

[6] When *Perot* was decided, the Campaign Act was in a different part of the U.S. Code.  The old provisions were in 2 U.S.C. § 437; the Court has updated the citations to the current locations in the Code.  The relevant text has not changed.

> [C]ourts, including this Court, have more than occasionally misused the term "jurisdictional" to refer to nonjurisdictional prescriptions. The mere fact that this Court previously described something "without elaboration" as jurisdictional therefore does not end the inquiry.  To separate the wheat from the chaff, this Court has asked if the prior decision addressed whether a provision is "technically jurisdictional"—whether it truly operates as a limit on a court's subject-matter jurisdiction—and whether anything in the decision "turn[ed] on that characterization."

143 S. Ct. at 877–78 (citations omitted).  The Center argues that *Perot* "misus[ed] the term jurisdictional to refer to nonjurisdictional prescriptions" and therefore this Court should give no precedential weight to *Perot*'s holding about the jurisdictional nature of the preconditions.  *See* Resp. to Def.'s Notice of Suppl. Authority at 2 (quoting *Wilkins*, 143 S. Ct. at 877).

The Court is unpersuaded.  In *Perot*, the Court of Appeals did not merely make a passing reference to the statutory preconditions being jurisdictional; rather, the Court explained in detail how the Campaign Act reflected Congress's judgment to give the Commission near-exclusive jurisdiction to enforce the substantive provisions of the Campaign Act, as well as to carefully circumscribe a private party's ability to enforce the Campaign Act.  The Court is unpersuaded that it is not bound by *Perot*.

In any event, even if the Center was correct that *Perot* is not binding here, the Court would reach the same result.  The Campaign Act sets forth specific circumstances under which the private right of action is available, *see* 52 U.S.C. § 30109(a)(8), and expressly refers to limited and circumscribed jurisdiction, *see id.* § 30107(e).  To conclude that the Court has jurisdiction over the Center's claims would be to impinge on the authority Congress gave to the Commission.  *See generally id.* § 30109(a).

## CONCLUSION

For the forgoing reasons, in the matter of *Heritage Action for America v. Federal Election Commission et al.*, 22-cv-1422, the Court **GRANTS** Heritage Action's Cross-Motion for

21

Summary Judgment, **DENIES** the Commission's first and second Motions to Dismiss, and **DENIES as MOOT** Heritage Action's Motion for Discovery, Motion for a Hearing, and Motion to Expedite.  In the matter of *Campaign Legal Center v. Heritage Action for America*, 22-cv-1248, the Court **GRANTS** Heritage Action's Motion to Dismiss.  Appropriate orders will issue contemporaneously with this memorandum opinion.

DATE:  July 17, 2023

CARL J. NICHOLS
United States District Judge